[Civ. No. 4968. Third Appellate District.—May 7, 1934.]

J. E. JOHNSTON, Appellant, v. JOINT HIGHWAY DIS-
TRICT No. 12 OF THE STATE OF CALIFORNIA,
Respondent.

Nutter & Rutherford and A. P. Hayne for Appellant.

Loyd E. Hewitt for Respondent.

WEYAND, J., *pro tem.*—The plaintiff, appellant herein, was a contractor and performed certain road work for Joint Highway District No. 12 of the State of California, under a contract dated July 18, 1930. There is but one ultimate question involved herein, and that is whether the asphaltic concrete used on the roadway should have been measured in the wagon at the point of delivery to the place of use, or whether it was to be measured after the same had been compressed into the roadbed, as the roadway was finally constructed.

Appellant contends that the contract should be so construed that he be paid for this asphaltic concrete, measured in the wagon upon its delivery to the place of use. The respondent road district contends the asphaltic concrete should have been measured when compressed "in place".

The contract under which the plaintiff was operating had therein a provision as to the asphalt to be furnished, and paid for, worded as follows: "5B 21330 Cubic yards asphalt concrete base with type 'A' surface in place (Alternate 'B') at seven dollars and sixty cents per cu. yd." Plans and specifications were as usual made .a part of the contract, direct provision was made for payment of concrete work according to dimensions shown on the plans and cross-section. There is in the specifications, however, a provision worded as follows: "Material paid for by the cubic yard will be measured in the vehicle at the point of delivery on the road." In connection with the specifications as to the delivery of materials sold by the cubic yard it was provided that each truck delivering material should be marked as to its cubic content. Work on the contract was begun in the summer of 1930.

The actual capacity of the trucks that delivered asphalt to the present road job varied from 4 cubic yards to 5.6 cubic yards. On June 28, 1931, a representative of plaintiff measured the trucks for the first time and found their capacity as last above stated. This was not done until after the delivery of asphalt was about three-fourths completed.

During the delivery of the asphalt and as the work progressed the plaintiff from time to time signed claims for part performance, and in all these claims payment was to be made at the rate of $7.60 per cubic yard of asphalt concrete "in place".

The bid of the plaintiff for this work was for asphalt concrete "in place".

During the performance of the work, and up to a time when more than one-half thereof was completed, no measurement was or could be made of asphalt, in wagon at place of delivery, because no measured wagons were provided by plaintiff, or used by him. A measurement was made of asphalt "in place", and the payments to be made by the district therefor were based on cement in place in computing the progress claims, and these claims were from time to time signed and verified by appellant.

The specifications and cross-sections clearly indicated that an estimate of 21,330 cubic yards of asphaltic concrete in place were necessary for the completed job, and it was evident that if asphalt was to be paid for according to measurement in wagons at place of delivery, over 30,000 cubic yards were required.

■ Appellant contends that as the contract was ambiguous, and as the district, by its officers, provided the contract, they should suffer because of this uncertainty. Section 1654, Civil Code, is cited in support of that contention.

We cannot concede that the contract is uncertain, because in the general specifications there is the language "Material paid for by the cubic yard will be measured in the vehicle at the point of delivery on the road" when in the body of the contract it is provided, payment is to be made for asphalt "in place". The specifications are necessarily general, but the final contract is special and definite. ■ However, if we do consider the whole contract as being uncertain, the very wording of section 1654 of the Civil Code puts upon the private party the blame for such uncertainty.

The appellant was an experienced contractor, and had performed much road work.

If we are to consider the contract involved herein as being ambiguous or uncertain, as to the provision relating to payment for the asphaltic concrete used, there are two well-settled rules that we are at liberty to use.

One rule is that we may consider how one party knew the other party understood the agreement. In the instant case the plans and specifications and the cross-sections disclosed conclusively that four alternative types of construction were contemplated. Bids were asked on all four types. The entire yardage of material when placed in the finished roadway was the same. The bid made by Johnston was the lowest bid made. Discussion was then had with Johnston, and the plans and specifications and the cross-sections were again called to his attention. The yardage was fully shown in the cross-sections, and there was no difference in yardage whether cement was used or asphaltic concrete. The yardage being the same, appellant knew that the respondent must have meant cubic yards in place. No other meaning could be in the mind of respondent.

Another rule that we may consider is that we may go with the parties during performances of the agreement, and see how they performed the contract. In the present case appellant delivered more than one-half of the asphalt knowing it was being measured in place. Appellant, as before stated, signed and swore to demands based upon measurement in place.

From an examination of the record herein it seems apparent that appellant must have known that the respondent district would interpret the provision as to payment for the asphalt, as the same was interpreted by the district.

Our Civil Code, section 1649, provides as follows: ''If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.''

Section 1864 of the Code of Civil Procedure expresses the same thought, but is applied to the question of the introduction of evidence.

Without dispute the evidence discloses that after the bids were made, and before the contract was actually let, appellant was questioned by the board and the engineer as to how it came and why it was that his bid was so much lower than other bids. Appellant did not explain this difference except to say that his generosity, coupled with the fact that he owned his own rock-crushing plant, made up for his ability to quote the figure he gave as a bid. As before stated, he was a contractor of long experience. The cross-sections of

the work were before him. His bid was for asphalt "in place". The only explanation he could have given if his present claims are to be given credence, would have been that he was going to demand that asphalt would be measured in wagon before compression into the constructed roadway. No such explanation was made by him. In other words, he either rested upon the assumption that after the work was done he would make that claim, or was so careless or unconcerned as to permit the officers of the district to believe that his bid was the lowest bid, when he knew or should have known that it was much higher than many of the bids submitted, if asphalt was to be paid for measured in wagon at place of use.

In Williston on Contracts, section 623, page 1206, it is said: "The interpretation given by the parties themselves to the contract as shown by their acts will be adopted by the court, and to this end not only the acts but the declarations of the parties may be considered. But if the meaning of the contract is plain, the acts of the parties cannot prove a construction contrary to the plain meaning."

Quite the same provision is set forth in Elliot on Contracts, in section 1537, volume 2, of said last-named work.

As a rule of evidence relating to this subject, Jones' Commentaries on Evidence, volume 3, section 453, says: "It is a familiar rule that where the language of a written instrument is ambiguous or indefinite, the practical interpretation of the parties may be proved, and is often entitled to great weight."

Without quoting from them, it may be said that the following California cases fully support the above rule: *Grant* v. *Bannister*, 160 Cal. 774 [118 Pac. 253]; *Yule* v. *Miller*, 80 Cal. App. 609 [252 Pac. 733]; *Woodard* v. *Glenwood Lumber Co.*, 171 Cal. 513 [153 Pac. 951].

As we view the contract, we cannot say it is ambiguous or uncertain as to how payment was to be made, but it is apparent that during the trial the learned trial judge did so assume, and was justified in so doing. Much of the testimony was addressed to that question, but even so, we can see no error to the prejudice of appellant in any of the rulings made.

The judgment is affirmed.

Pullen, P. J., and Thompson, J., concurred.