[Civ. No. 16618.   First Dist., Div. Two.   Feb. 21, 1956.]

CHARLES H. BERGER, Appellant, v. SEQUOIA UNION HIGH SCHOOL DISTRICT et al., Respondents.

Antonio J. Gaudio for Appellant.

Keith C. Sorenson, District Attorney (San Mateo) and Lyle R. Edson, Deputy District Attorney, for Respondents.

DEVINE, J. pro tem.*—Plaintiff has appealed a judgment in which it was decided that defendant school district was not responsible for certain claims made by plaintiff under a contract for grading land. Plaintiff had bid on the grading of a hillside site for the San Carlos-Belmont High School. The contract called for removal of earth from the hillside, the terms being payment to the contractor of 17 cents per cubic yard, with the provision that contractor could dispose of it as he saw fit. The estimate set forth in the contract was that 71,000 cubic yards of material would be removed.

The work was to be done chiefly on the southwest quadrant of the school site, as appears more specifically below. After plaintiff had made some progress with the work, another contractor, whose work was to have been mainly on the southeast quadrant, came upon the southwest quadrant, at the direction of the district's engineer, and removed some 25,255 yards of material from the southwest quadrant. The reason for directing the other contractor to do this was that the school district had not yet acquired title to some of the land

*Assigned by Chairman of Judicial Council.

in the southeast quadrant, and additional material was needed for fills in that area. Plaintiff's basis of complaint is that he was deprived of a large quantity of material which he could have excavated, hauled away and sold at a profit.

When plaintiff protested to the engineer, he was told to remove material in amounts equal to that of which he was deprived from the southeast quadrant, for the title matter now had been settled. That he obtained an equivalent amount of material is stipulated, but plaintiff contends, and to a certain extent it is admitted by defendant's witnesses, that the earth in the southwest quadrant was more easily excavated and was suitable for sale, while that in the southeast quadrant consisted largely of boulders which were expensive to excavate and were of little or no value for sale. Plaintiff testified that he was told by the district's engineer to keep track of his costs for the work on the southeast quadrant, and that he would recover his costs; but defendant's engineer testified that there was no agreement for extra compensation, that he was without authority to make such agreement and that it was possible he had told plaintiff to keep records and that "it was up to the Board," but he did not even recall that.

Under the pleadings, the sole issue before the court was an alleged breach of contract in allowing the removal of the 25,225 cubic yards by the other contractor. (In the complaint this was stated as 50,814 cubic yards, but the actual amount was agreed upon at the trial.)

The trial court found that plaintiff was not deprived of any excavated material which, under the terms of the agreement, he was privileged to sell, and it is this finding which appellant attacks as unsupported by the evidence.

The proposal form which appellant signed reads: "Schedule B-1. Estimated quantity 71,000 cu. yds. Excavation, all classes of material removed from site, at seventeen cents per cubic yard $0.17. $12,070.00." As plaintiff actually received $12,495.32 at $.17 per cubic yard, he cannot, of course, complain of any breach up to this point.

Appellant relies largely on the following paragraph entitled "Special Provisions" in the contract: "Schedule B. The work covered by Schedule B of the Proposal Form accompanying these plans and specifications shall include only that excavated material which is removed from the site. Such material shall become the property of the contractor and may be disposed of as he sees fit. In general the areas to be excavated under this schedule will be those under future

buildings and adjoining areas in the southwesterly quadrant of the site."

It is appellant's contention, to quote his brief, that this "gave him virtual ownership of that material underlying the location of future buildings which were to be constructed in the southwesterly quadrant and adjoining areas." Thus, appellant reasons that there was a breach in the removal by the other contractor which was not compensated by requiring plaintiff to excavate the inferior southeast quadrant.

In the first place, the words "in general" indicate that the material was not necessarily to be taken entirely from the southwest quadrant. About 65 per cent of the earth removed by plaintiff was taken from that quadrant. However, we need not decide whether or not approximately two-thirds of a sum satisfies the requirements of the term "in general." The quoted part of the contract provides that the work covered by Schedule B "shall include only that excavated material which is removed from the site," and such material, the contract states, becomes the property of the contractor; that is, such material as is removed. Thus, "virtual ownership" of the material *in situ* was not given to plaintiff.

Moreover, the contract provides that "The quantities given in the notice to contractors, proposal and contract forms are approximate only, being given as a basis for comparison of bids, and the District does not expressly, or by implication, agree that the actual amount of work will correspond therewith, but reserves the right to increase or decrease the amount of any class or portion of the work, or to omit portions of the work, as may be deemed necessary or expedient by the District Engineer."

This permitted a reduction of the work which was contained in the estimate. No doubt it is true, as plaintiff testified, that he based the unit price of 17 cents by estimating his costs on a probable 71,000 cubic yards of material, and believing that material would be from the southwest quadrant; but he was working under a very flexible contract which he had chosen to sign. When the engineer directed the other contractor to take a quantity from the southwest quadrant he was, in effect, decreasing the portion of the work to be done by plaintiff.

Plaintiff complains that the court should have made a segregation of "the performance by appellant as to Schedule 'A' (southeast quadrant of the job site)," under the clause of the contract which states "The Contractor shall cooperate

with the Engineer in maintaining a clear division between excavation removed under Schedule A and that removed under Schedule B to the end that accurate measurements may be made covering material moved under each schedule." That clause plainly was to be applied if a single contractor had been awarded the performance of both schedules, under one of the possible ways of bidding. Plaintiff bid only for Schedule B; he was to be paid only under that schedule; and his written contract based on competitive bids could not have been modified by the engineer. (Ed. Code, § 18051; *Strauch* v. *San Mateo Junior College Dist.*, 104 Cal.App. 462 [286 P. 173] ; *Bear River etc. Corp.* v. *County of Placer*, 118 Cal.App.2d 684, 689 [258 P.2d 543].)

█ If some of the quite elastic provisions of the contract are uncertain, then, the contract, being one with a public body, is to be construed against the private contractor. (Civ. Code, § 1654; *Johnston* v. *Joint Highway Dist. No. 12*, 138 Cal.App. 450 [32 P.2d 681].)

The officers of the district had decreased the work to be done by plaintiff in the southwest quadrant as they were entitled to do under the contract, and whether or not plaintiff was forced, as he asserts, to work on the other quadrant under terms of the contract calling for general cooperation, and under the engineer's direction, is not material under the pleadings. Plaintiff attempts to bring the additional costs to which he says he was put within the terms of the first count of the complaint. That count states that plaintiff removed 119,855½ cubic yards from the project (a figure admittedly excessive because it was agreed he removed 73,502 yards) at the unit price of 17 cents. Nothing at all is said anywhere in the complaint about any compulsion to do work for which a higher unit price should be paid.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.