[Civ. No. 3333. First Appellate District, Division One.—July 24, 1920.]

CONTRA COSTA CONSTRUCTION COMPANY (a Corporation), Respondent, v. THE CITY OF DALY CITY (a Corporation), Appellant.

[1] MUNICIPAL CORPORATIONS — CONSTRUCTION OF PIPE-LINE — EXTRA WORK — NONCOMPLIANCE WITH CONTRACT — LIABILITY OF CITY.— Where a contract with a municipal corporation for the construction of a water-pipe line for the city's water supply specifies the precise conditions under which alone it will be obliged to pay for extra work, but this method is not followed by the contractor, there can be no recovery for such extra work under the contract.

[2] ID.—IMPLIED CONTRACT.—An implied contract does not arise for work done for a municipality under an *ultra vires* contract.

[3] ID.—POWERS OF CITY ENGINEERS—ORDERING OF EXTRA WORK— LIABILITY OF CITY.—Where city engineers are not permitted to contract on behalf of the city under the terms of the contract defining and limiting their powers, they cannot by their conduct give rise to an implied contract; and the city cannot be held liable to a contractor for the acts of such engineers in ordering extra work.

[4] ID.—POWERS OF OFFICERS OF CORPORATION—IMPLIED KNOWLEDGE.— One dealing with a municipal corporation is chargeable with knowledge of the limitations of power of its agents and officers.

APPEAL from a judgment of the Superior Court of San Mateo County. Geo. H. Buck, Judge. Reversed.

The facts are stated in the opinion of the court.

George Appell for Appellant.

Ramsey Probasco, Robinson & Sizer and Albert B. Harris for Respondent.

KOFORD, J., *pro tem.*—This is an appeal from a judgment for extra work, in favor of plaintiff and against defendant, a municipal corporation.

The plaintiff and the city of Daly City, a municipal corporation, entered into a written contract for the construction of a water-pipe line for the city's water supply. The pipe-line was required to be laid, by the contract, plans, and

specifications, in Mission road (outside of city boundaries), three and one-half feet below the old curb line of the road. After plaintiff commenced work it was stopped by an injunction not involved here, and before work recommenced it developed, or was discovered for the first time, that the state was undertaking the construction of a section of concrete paved highway along this portion of Mission road. The State Highway Commission, as it is popularly called, asserted and maintained exclusive possession of the road and the right of way, including the strip of land adjoining the pavement where the pipe was to be laid. The city's engineers thereupon wrote a letter to the Highway Commission asking for a permit on behalf of the city to lay the pipe. This permit was granted, but only on certain conditions as to the manner in which the work should be performed. Among those conditions was the requirement that the pipe be laid four feet below the profile of the highway pavement instead of three and one-half feet below the old curb line.

The plaintiff was informed by the city engineers of this new requirement and of changes in the plan necessary to meet this requirement. The plaintiff continued with the work, and then discovered that this change in the plan would bring the pipe trench below the surface soil and into rock, and it protested that this would entail considerable additional expense. The engineers orally directed the plaintiff to proceed with the work and "keep a good record of it and see what it costs, and when we get through we will make a fair settlement with you."

After the work was finished a claim for the extra work, labor, and materials necessitated by this change in the plan was presented to the board of trustees and was by it rejected. This suit was commenced for the sum of $2,844.80, and resulted in a judgment for $1,432.98. The original contract price was $8,900.

The contract provided that the work should be done in strict accordance with the plans and specifications, and completed to the satisfaction of the engineers of the city, and its board of trustees, for the sum of $8,900; and it further provided that in the event of any deductions or additions being made, certain unit prices established and specified in the contract would be used in determining the amount to be added or deducted. These, however, do not include the

changed depth of the trench.   The specifications contained provisions to the effect that the engineers should decide, in case of misunderstanding, as to the true interpretations of the plans and specifications, and correct errors or omissions in the plans and specifications when necessary for the proper fulfillment of their intention.   The board of trustees might by resolution order alterations in quantities of materials specified, and in case of increase it should be paid for upon the established unit prices.   All necessary rights of way for the construction of the work to be guaranteed by the city; also the following provision under the heading ''Extra Work'': ''Any work not contemplated in these specifications that may be requested of the contractor by the engineers shall be paid for according to a prearranged schedule of prices agreed to between the engineer and the contractor, and no payments will be made for such work unless they be authorized by resolution of the board of trustees.''

[1]   The municipality had the right to specify in the contract the precise conditions under which alone it would be obliged to pay for extra work.   This it did.   But this method was not followed by the contractor.   There was no prearranged schedule of prices for the extra work agreed to between the engineers and the contractors; neither was the extra work or alteration, nor any payment therefor, authorized by resolution of the board of trustees.   As this provision of the contract was not complied with there can be no recovery under the express contract.   (*Gray* v. *La Societe Francaise, etc.,* 131 Cal. 566, [63 Pac. 848].)

The findings are prepared in such a way as to support the theory of an implied as well as an express contract.   We are of the opinion that the evidence is insufficient to support the judgment on the theory of an implied contract.   [2]   It is well settled that an implied contract does not arise for work done for a municipality under an *ultra vires* contract. (*Reams* v. *Cooley,* 171 Cal. 157, [152 Pac. 293]; *Zottman* v. *San Francisco,* 20 Cal. 96, [81 Am. Dec. 96].)   That would have the effect of putting the power to contract where none existed, and would in effect change the charter of the city. [3]   As the engineers here were not permitted to contract on behalf of the city under the terms of the contract defining and limiting their powers, to hold that they could by their conduct give rise to an implied contract would in

effect change the express contract and brush away the safeguards the city had placed in the contract for its protection. The city cannot be held liable for the acts of the engineers in ordering this work, unless the engineers in fact had the power so to do. [4] One dealing with a municipal corporation is chargeable with knowledge of the limitations of power of its agents and officers. (*Wallace* v. *San Jose,* 29 Cal. 180.) The fact that the city guaranteed all rights of way did not enlarge the powers of the engineers nor authorize them to act as general agents with full power to secure the right of way. This was a matter which should have been taken up by the contractors with the board of trustees under the contract. An implied contract in this case could not arise at least without knowledge or action on the part of the board of trustees before the extra work was done. (*Griffiths* v. *Los Angeles,* 6 Cal. Unrep. 119, [54 Pac. 383].)

The only action of the board of trustees in regard to the matter is the rejection of the claim for payment for the extra work. The whole matter seems to have been handled between the engineers and contractors under the belief that equitable considerations would prevail, and not the strict terms of the written contract. The engineers had no power to obligate the city for this extra work. The judgment is not supported by the evidence, either on the theory of an express or implied contract.

The judgment is therefore reversed.

Waste, P. J., and Richards, J., concurred.