[Civ. No. 8244.   Third Dist.   June 24, 1953.]

BEAR RIVER SAND AND GRAVEL CORPORATION (a Corporation), Appellant, v. COUNTY OF PLACER et al., Respondents.

Thomas M. Montgomery, Jr., for Appellant.

Al B. Broyer, District Attorney, and Franklin H. Tuttle, Assistant District Attorney, T. L. Chamberlain and F. L. Sinclair, for Respondents.

JONES, J. pro tem.—This action was commenced by the Bear River Sand and Gravel Corporation against the county of Placer, and the legal representative of Jerome E. Barieau, former road commissioner of the county, now deceased. Three counts were set up in the amended complaint. The second count was dismissed and demurrers to the first and third counts were sustained with leave to amend. Plaintiff declined to amend and judgment was entered for the defendants and it is from this judgment plaintiff has appealed.

Appellant contends that a letter written by it to Barieau and his reply thereto created an enforceable contract against the county and it has sued in its first count for damages for breach of this alleged contract. The third count is against Barieau and is framed upon the theory that the road commissioner warranted himself to be an agent of the county. It is for breach of this alleged warranty that plaintiff seeks to recover damages from his estate.

The letters upon which plaintiff relies are as follows:

"June 1, 1949

"Mr. Jerome Barieau,
 Placer County Road Commissioner
 130 Commercial Street,
 Auburn, California.

"Dear Mr. Barieau:

"Confirming our conversation, it is our proposal to move our portable crushing plant to the County gravel deposit located on the Middle Fork of the American River at Mammoth Bar, and deliver ¾ inch crusher run material produced from crushing the dredge tailings at the Mammoth Bar Deposit into either stockpile or into county trucks *at a price* of $1.00 net per ton of 2000 pounds, plus state sales tax.

"It is further understood that ⅛ x ¼ crushed rock screenings will be produced *at a price* of $1.60 net per ton, and

¼ inch to dust screen material *at a price* of $1.40 net per ton, both plus state sales tax.

"If the County elects, we will also install our portable Barber-Green Pug Mill at the Mammoth Bar Deposit, and produce road mix from the crusher run material produced by the crushing plant *at an additional price* of $1.00 net per ton plus state sales tax, it being understood and agreed that the County will furnish the necessary asphalt for this operation.

"In both the crushing plant and pug mill plant operation, it is understood that the County will furnish sufficient trucks to take the full capacity of the two plants, and that such material not taken by the County trucks will be placed in stockpiles at the Mammoth Bar location for the account of the County, and such additional cost of loading from stockpiles into County trucks will be at the County expense.

"It is understood and agreed that a minimum of 10,000 tons of crushed rock *is to be taken* by the County and a minimum of 5000 tons of road mix under this proposal.

"It is further understood, that *in the event sales can be made* by the Bear River Sand and Gravel Corporation on material produced from this location *to consumers other than Placer County*, a royalty of $0.25 net per ton will be paid to Placer County on such sales.

"We trust that this is the information you desire, and that we may be favored with this contract.

Yours very truly,

BEAR RIVER SAND & GRAVEL CORP.

By B. E. OLIVER

BEC/jmr          President."

 (Italics added.)

To this letter the road commissioner replied as follows:

"June 2, 1949

"The Bear River Sand & Gravel Corporation
 Placer County Bank Building
 Auburn, California

"Gentlemen:

"We have your letter of June 1, 1949, regarding crushing rock on the river gravel at Mammoth Bar. This is your confirmation to go ahead making your preparation for crushing this rock.

"We will be a little slow in giving you the money for the rock, but we can begin to pay you immediately after July 1,

1949. My understanding is that you are to crush up this material for road mix which we will put on the road just near the top of the hill.

"Your letter says that *you would like to deliver* some of this rock to some other client at $.25 per ton, but I cannot answer this portion of the letter at this time until I take it up with the Board of Supervisors. So as to be ready for this coming summer's work, this is your permission to go ahead and crush rock for the Foresthill Divide road for this summer's work.

Yours very truly,<br>
JEROME BARIEAU<br>
JEROME E. BARIEAU<br>
Road Commissioner."

JEB/co

(Italics added.)

■ The position of appellant is that the transaction was in effect a rental of its equipment to the county at a price of so much per ton for rock crushed upon a contract which was ratified by the board of supervisors through the allowance of its claim for 1,170 tons of rock crushed. We cannot subscribe to this contention.

Appellant's letter to Barieau states that ". . . *it is our proposal to . . . deliver* ¾ inch crusher run material produced from crushing the dredge tailings at the Mammoth Bar deposit into either stockpile or into county trucks *at a price* of $1.00 net per ton of 2000 pounds, plus state sales tax." (Italics added.) The letter also contains the following pertinent paragraph: "It is further understood, that in the event *sales can be made* by the Bear River Sand and Gravel Corporation on material produced from this location *to consumers other than Placer County,* a royalty of $0.25 net per ton will be paid to Placer County on such sales." (Italics added.) That the county should bind itself to accept delivery at the stated price is indicated by this language of appellant: "It is understood and agreed that a minimum of 10,000 tons of crushed rock *is to be taken* by the County and a minimum of 5000 tons of road mix *under this proposal.*" (Italics added.)

Barieau's answer to appellant's letter says: "This is your confirmation to go ahead making your preparation for crushing this rock. We will be a little slow *in giving you the money for the rock,* but we can begin to pay you immediately after July 1, 1949. . . . Your letter says that you would like to

*deliver* some of this rock *to some other client* at $.25 per ton, but I cannot answer this portion of the letter at this time until I take it up with the Board of Supervisors." (Italics added.)

In neither letter is mention made of lease or hire of appellant's machinery. On the other hand, the letters treat of the doing of work for the county under contract, i.e., the crushing of rock and the payment therefor after acceptance. The letters negative all idea of rental or lease of the appellant's machinery.

Furthermore, the claims presented to the board of supervisors (Exhibits A and B attached to the complaint) in each instance recite that the demand is for crushed rock placed in stockpiles at the Mammoth Bar deposit.

The road commissioner was without power to negotiate such a sale, and so was the board of supervisors without advertising for bids. (*Miller* v. *McKinnon,* 20 Cal.2d 83 [124 P.2d 34, 140 A.L.R. 570] ; *Los Angeles Dredging Co.* v. *Long Beach,* 210 Cal. 348, 353 [291 P. 839, 71 A.L.R. 161] ; *Reams* v. *Cooley,* 171 Cal. 150 [152 P. 293, Ann.Cas. 1917A 1260] ; *Mullan* v. *State,* 114 Cal. 578 [46 P. 670, 34 L.R.A. 262] ; *Contra Costa Construction Co.* v. *Daly City,* 48 Cal.App. 622 [192 P. 178].) ■ When the power of a board or public officer is limited to a prescribed method of contracting, the mode prescribed becomes the measure of the power. If the prescribed mode is disregarded, the contract is void and unenforceable.

The office of road commissioner is created by the Streets and Highways Code. Sections 2006 to 2009 of that code provide for the appointment by the board of supervisors of a single road commissioner for all road districts in each county of the state, fix his qualifications, prescribe from what monies his salary shall be paid, and limit his contractual powers. ■ Our form of state government makes provision for the Legislature to establish offices in addition to those created by the Constitution (Const., art. XX, § 4; *Ex parte Gerino,* 143 Cal. 412 [77 P. 166, 66 L.R.A. 249]), and to prescribe their duties and fix their terms of office. (Const., art. XI, § 5; *Reed* v. *Hammond,* 18 Cal.App. 442 [123 P. 346].) ■ As is held in *Ryan* v. *Riley,* 65 Cal.App. 181, 191-192 [223 P. 1027], the road commissioner is one of those offices and the incumbent is an officer of the county, and not an employee or agent with authority arising out of contract.

■ The source of the power of the road commissioner is in the sections of the Streets and Highways Code cited. His

contractual power is limited by section 2009 of this code to hiring employees and to the purchase, lease or hire of road equipment. This power to so contract is, however, a conditional one, and by virtue of the statute can only be exercised "subject to the approval of the board as to the price or rental." By no provision of the law is any authority conferred upon him to purchase road materials of any kind.

One who deals with a public officer stands charged presumptively with a full knowledge of that officer's powers and is bound at his peril to ascertain the extent of his power to bind the government of which he is an officer, and any act of an officer to be valid must find express authority in the law or be necessarily incidental to a power expressly granted. (*Irwin* v. *County of Yuba*, 119 Cal. 686 [52 P. 35].)

While the courts will go to all reasonable lengths in interpreting the statutes conferring powers upon the officers of the state in order that the laws may be given effect and the ends of justice subserved, they cannot by construction confer upon any officer an authority which the Legislature has seen fit to withhold. (*Christophel* v. *Riley*, 206 Cal. 242, 245 [273 P. 1064]; *Allen* v. *State Board of Equalization*, 43 Cal.App.2d 90, 93 [110 P.2d 73].) No government, whether state or local, is bound to any extent by an officer acting in excess of his authority even though it has received substantial benefits deriving from the ultra vires act. (*Reams* v. *Cooley, supra*, at p. 157.) Since Barieau as road commissioner was not authorized by any provision of the law to purchase materials of any character for use on the county roads, the county of Placer could not be bound.

If, as appellant contends, Barieau ordered the crushed rock for the county of Placer, he had no authority in the law to do so and his act was void. The void acts of a public officer cannot be ratified. This principle is pointed out in *Miller* v. *McKinnon, supra*, at page 88, where it is stated, " 'that contracts wholly beyond the power of a municipality are void. They cannot be ratified; . . . .' " The road commissioner having no power in the first instance to purchase road materials for the county, the board was without power to ratify any act on his part directed to this end.

In the third cause of action it is alleged that, "Said Jerome E. Barieau at all times herein mentioned was the duly appointed, qualified and acting Road Commissioner of defendant County of Placer." It is also alleged that he wrote the letter of June 2, 1949, subscribed by him as road com-

missioner. There is no allegation that Barieau acted, or purported to act, in any capacity other than that of road commissioner and as a public officer. This failure renders the third count fatally defective.

■ A distinguishing feature between an office and an agency is that the former has its origin in the law while the latter originates in contract. ■ The incumbent of an office is clothed with some part of the sovereignty of the state to be exercised in the interests of the public and as required by law. An agent is usually engaged in a temporary employment to perform a particular act or acts. (*Curtin* v. *State of California,* 61 Cal.App. 377 [214 P. 1030].) It is not here pleaded that Barieau assumed to act in any such capacity (Civ. Code, § 2342), and there is, therefore, a failure to plead the warranty upon which appellant relies.

The demurrers in our opinion were properly sustained.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.