[Civ. No. 47194. First Dist., Div. Three. Nov. 14, 1979.]

GREYHOUND LINES, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
SHERRY OLSEN, Real Party in Interest.

**COUNSEL**

Carroll, Burdick & McDonough, Richard B. McDonough, John K. Stewart, Donald T. Ramsey, Gassett, Perry, Frank & Bondelie and Peter G. Samuelson for Petitioners.

No appearance for Respondent.

Jacques M. Adler for Real Party in Interest.

OPINION

**SCOTT, J.**—Petitioners, Greyhound Lines, Inc. and James Hurson, sought to compel the performance of an oral settlement agreement made by real party in interest, Sherry Olsen, at a judicial settlement conference. After a full evidentiary hearing as approved in *Gregory v. Hamilton* (1978) 77 Cal.App.3d 213 [142 Cal.Rptr. 563], the petition was denied. We granted Greyhound's petition for an alternative writ of mandamus to review the trial court's order.

Real party Olsen filed an action against Greyhound Lines and James Hurson for injuries sustained when a Greyhound bus collided with Hurson's car, in which Olsen was a passenger. Settlement conferences were conducted before Judge Edward Cragen on several days in March of 1979. On the last day of these conferences, immediately prior to trial, Greyhound agreed to pay Olsen $30,500 and Hurson agreed to pay $9,000, for a total "package" settlement of $39,500. Olsen's attorney agreed to the settlement, telephoned Olsen and obtained her acceptance of the offer, which fact was communicated to counsel and the court. A minute order was made, indicating "this cause settled this day in conference."

Thereafter, Greyhound and Hurson sent releases and settlement drafts to Olsen's attorney. Olsen, however, dismissed her attorney and refused to sign the releases or accept the agreed upon settlement. A new attorney was substituted. He returned the unsigned releases and drafts to petitioners' attorney, indicating that the terms of the settlement were unacceptable, without specificity as to which terms were unacceptable.

Nearly two years later, at the time of the hearing on petitioners' motion to compel performance of the settlement agreement, Olsen cited certain "hold harmless" provisions in the release agreement as being provisions upon which she had not agreed. It is also obvious from Olsen's contentions made below, as well as in opposition to petitioners' petition here, that she had second thoughts on the amount of the settlement and considered the amount to be grossly inadequate and unfair.

In its minute order denying the petitioners' motion the trial court stated: "The sole basis for the Court's decision centers on certain language contained in the Releases submitted to the plaintiff for execution and the effect of that language on the monetary agreement which had

been reached by the parties on March 7, 1977. The Court, after full hearing, after weighing the conflicting testimony and documentary evidence, after observing the demeanor of the witnesses and judging their credibility, determined that plaintiff SHERRY OLSEN was fully aware of the amount of the settlement ($39,500), had agreed to accept that amount, and was fully cognizant of the fact that that sum was a final settlement of all her claims, now and in the future, arising out of the accident concerned.

"However, it is equally clear and established by the evidence, that as a condition of the settlement the plaintiff was required to execute a release in favor of the defendants. Paragraph 5 of the release prepared and submitted by defendant HURSON and Paragraph 4 of the release submitted by the defendant GREYHOUND LINES, INC., contains language which imposes a potentially substantial obligation on the plaintiff. Prior to the time that the releases were submitted to her for signature, the subject matter of the two paragraphs referred to had not been discussed with her and she had no prior knowledge of this imposed condition. Counsel for GREYHOUND states that 'Paragraph 4 of the release is a standard clause contained in releases which is applicable only in the event that there is an outstanding worker's compensation claim or a lien asserted by organizations such as Medi-Cal....' The Court is of the opinion that the language of the paragraphs alluded to is subject to a much broader interpretation than that which counsel describes.

"The testimony of defense counsel PETER SAMUELSON to the effect that there would not have been a settlement without releases, and defendants having submitted releases which contained a material condition which had not been agreed to by the plaintiff, the defendants cannot now complain that plaintiff should be held to the terms of a bargain to which she did not agree."

 Our function is to determine if there was substantial evidence to support the trial court's order. Neither party contends that there is not substantial evidence to support the trial court's determination that the parties agreed upon the settlement figure of $39,500. The dispute here, as it did below, centers on the "hold harmless" clause. As to that clause, petitioners do not contend that it was not a material provision which had not been agreed upon by Olsen. Their contention is that the entire release was unnecessary, that the settlement had been reached by the oral agreement of the parties, concurred in by Olsen as to the amount,

and that the release agreement was superfluous. Petitioners further assert that at the time of the hearing on their petition they agreed to waive those provisions and not require agreement thereto by Olsen. Hence, the court should have ordered the settlement as agreed.

However, at the hearing on petitioners' motion, Peter Samuelson, attorney for Hurson, testified that at the time of the settlement the signing of the releases was a condition of the settlement. He testified that there would not have been a settlement without signed releases. In other portions of his testimony Samuelson was somewhat equivocal about the releases. However, the trial judge was entitled to rely upon that portion of his testimony relative to the necessity of the releases. Petitioners here urge that Samuelson was merely expressing a legal opinion concerning the necessity of the releases, which we are not bound to accept. From an examination of the transcript of Samuelson's testimony, however, it appears that he was testifying not as to his opinion of the legal necessity of the releases, but that the releases as drafted, which included the material hold harmless provisions not agreed to by Olsen, were an integral part of the settlement agreement.

It appears, therefore, that there is substantial evidence to support the trial court's determination that Olsen had not agreed to the terms of the proposed settlement. Petitioners' offer to waive the release provisions was an invitation to make a new and different settlement two years after negotiations. Olsen was not obliged to accept the invitation.

In issuing the alternative writ, this court was concerned about practices that would undermine the integrity of the settlement conference procedure. ■ The public policy of this state supports the pretrial settlement of lawsuits. (*Cassin* v. *Financial Indemnity Co.* (1958) 160 Cal.App.2d 631, 636 [325 P.2d 228]; Cal. Pretrial and Settlement Procedures (Cont.Ed.Bar 1963) p. 169.) It is common knowledge in the legal profession that judicially supervised settlement conferences are critical to the efficient administration of justice in California. When the material terms of the settlement are agreed upon at the conference, the agreement must be enforced by the court.

■ Real party's contention that oral compromise agreements are barred by the statute of frauds is without merit. Real party cites California Uniform Commercial Code section 1206, which provides that a contract for the sale of personal property of a value in excess of $5,000

is unenforceable unless the contract is in writing. However, in the settlement of a lawsuit there is no sale of a "chose in action." Therefore, the provisions of the statute of frauds do not apply. ■ Oral agreements to compromise and settle lawsuits reached at judicially supervised settlement conferences are enforceable in a number of ways (see *Gregory* v. *Hamilton, supra,* 77 Cal.App.3d at pp. 217, 218), including by way of motion as attempted in the instant case. Such an agreement amounts to a stipulation and is enforceable as such. (See *Harris* v. *Spinali Auto Sales, Inc.* (1966) 240 Cal.App.2d 447 [49 Cal.Rptr. 610]; 1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys, § 124, p. 137; *Gregory* v. *Hamilton, supra.*)

Petitioners urge that not to enforce the settlement agreement in this case is to render the settlement conference frivolous and a waste of time. We share petitioners' concern. It appears, however, that under the factual posture of this case, where there is substantial evidence to support the trial court's determination that the parties did not orally agree to all of the material provisions of the settlement, the trial court did not abuse its discretion in denying petitioners' motion.

The alternative writ is discharged. The petition for a peremptory writ of mandate is denied.

White, P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied December 14, 1979, and the application of petitioner Greyhound Lines, Inc., for a hearing by the Supreme Court was denied January 24, 1980.