[Civ. No. 5537. Fifth Dist. Mar. 4, 1981.]

TERRY LYNN FORD, a Minor, etc., Plaintiff and Respondent, v.
THE STATE OF CALIFORNIA, Defendant and Appellant.

COUNSEL

George Deukmejian, Attorney General, and Robert H. O'Brien, Assistant Attorney General, for Defendant and Appellant.

Miles, Sears & Eanni and Richard C. Watters for Plaintiff and Respondent.

OPINION

HAMMERBERG, J.*—This appeal[1] questions the validity of an order specifically enforcing a settlement reached in a judicially supervised mandatory settlement conference.

Appellant contends that its counsel had no authority to compromise the action and seeks to show that lack of authority by counsel's affidavit filed more than six months after appellant had knowledge of the unequivocal minute order showing the case settled and a minor's claim compromised.

We conclude that the order is valid under the circumstances presented for the reasons hereinafter stated.

STATEMENT OF FACTS[2]

On December 14, 1977, Howard and Shirley Ford (the administratrix of Terrance Lyndon Ford's estate) filed a complaint in the County of Fresno for wrongful death against Kerry and Marvin Gerdts (Gerdts) and the State of California (State). The decedent, Terrance

---

*Assigned by the Chairperson of the Judicial Council.

[1]Defendant's notice of appeal indicates that the appeal is being taken from the order of judgment entered on or about March 1, 1980. Later, on March 26, 1980, the judgment was filed. We construe the order to be appealable. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 336.)

[2]This appeal is taken upon a record that is extremely brief and without a reporter's transcript, although it appears there were oral proceedings before the court, e.g., compromise of minor's claim and motion pursuant to Code of Civil Procedure section 473.

No explanation is given for the failure of the parties to utilize the services of the official court reporter as provided by Code of Civil Procedure section 269.

We consider ourselves bound to assume that enough appears in the record to enable

Lyndon Ford, was the son of Howard and Shirley Ford; the accident causing decedent's death allegedly happened on Pismo State Beach near its intersection with Grand Avenue (Grover City) ramp.

A complaint for wrongful death was also filed in San Luis Obispo County by Lori Burnett, the mother and guardian ad litem of Terry Lynn Ford (Terry), the daughter of Terrance Lyndon Ford.

The named defendants in that suit include the State of California, Grover City, and the Gerdts. The Fresno action was transferred to San Luis Obispo County, and the two cases were consolidated.

On May 31, 1979, a settlement conference was held before Judge Woolpert. Present were Attorneys Watters (on behalf of respondent Ford); Levy (on behalf of the Gerdts); Miller (on behalf of Grover City); and Rood (on behalf of the State of California).

The settlement conference order signed by Judge Woolpert on that date shows the case was settled for $122,500, and "the minor's compromise approved now based on discussion today—formal papers to be signed without further hearing."

On June 1, 1979 (the day after the settlement conference), Watters sent a letter to all counsel present at the settlement conference reiterating that a settlement had been reached and how much each of the defendants owed.

On June 6, 1979, the clerk of the court mailed a copy of the May 31, 1979, settlement conference order to each of the counsel named, i.e., Watters, Levy, Miller, and Rood.

On August 8, 1979, Judge Woolpert signed an "Order Authorizing Compromise of Wrongful Death Claim of Minor."

---

us to decide whether reversible error was committed and to make a ruling on the basis of what affirmatively appears therein. (See *Skoglie* v. *Crumley* (1972) 26 Cal.App.3d 294, 298 [103 Cal.Rptr. 205], citing *Sloan* v. *Sterns* (1955) 137 Cal.App.2d 289 [290 P.2d 282]; *Codekas* v. *Dyna-Lift Co.* (1975) 48 Cal.App.3d 20, 23, fn. 1 [121 Cal.Rptr. 121]; Cal. Rules of Court, rule 52.)

We are therefore treating this appeal as being taken on the judgment roll, i.e., on the formal papers in the record and without any transcript of the oral proceedings. (See Cal. Rules of Court, rules 5(f) and 125(f).) The parties have not moved the court to augment the record as those rules provide, nor have they sought a settled statement under California Rules of Court, rule 4(e).

On December 13, 1979 (over six months after the settlement conference order), Watters noticed a motion for an order compelling enforcement of the compromised settlement agreement. Attached was his letter written on June 1, 1979. Watters also attached his declaration wherein he stated that the State had failed to pay its share (i.e., $49,900), whereas the other defendants had paid their share and had been given releases.

On January 7, 1980, Gerdts filed a motion to dismiss the State's cross-complaint, as it was allegedly agreed at the settlement conference that the mutual cross-complaints for indemnity by and against the codefendants would be dismissed with prejudice. Attached to the motion was Levy's declaration in support of motion to dismiss wherein he declared that a settlement conference had been held on May 31, 1979, and that a settlement had been agreed upon. He set forth therein some of the terms of the settlement.

On January 10, 1980, on behalf of the State, Rood filed his opposition to both motions with his declaration.[3]

On January 18, 1980, in an unreported proceeding before Judge Kirkpatrick, with counsel present, an order was entered in the court minutes: ". . . this matter submitted if a settlement is not reached on or before March 1, 1980. If on that date no settlement has been reached the Court will grant the judgment, and will also grant the Motion to Dismiss."

On February 11, 1980, Rood moved to set aside the granting of "judgment" of March 1, 1980, pursuant to Code of Civil Procedure section 473.

On February 29, 1980, the minutes of the court show the following entry: "Counsel present as noted. Declaration of Hon. W. Woolpert

---

[3]Rood's declaration provides in pertinent part: "I attended the Settlement Conference related to this Proceeding on May 31, 1979, in front of the Honorable W. R. Woolpert.

"During the process of settlement on that day, I informed all counsel and the Court that I would need to obtain approvals for the amount arrived at in chambers.

"I have sought said approval from the Department of Parks and Recreation for the past six months. I have engaged in many telephone calls with staff counsel for said department, made one trip to Sacramento relative to this case, met with staff counsel in Los Angeles, drafted three separate settlement memoranda, further, I have contacted state-wide chief for the section to which I am assigned, and a plan of action is now being formulated to obtain settlement authority."

present[ed] to Court. Matter argued by Counsel. The Court finds Judgment for Plaintiff as prayed. Counsel for Plaintiffs to prepare the total settlement Judgment and outline credits heretofore received in the matter."

The minute order shows Rood and Watters present and, further, the name of a court reporter which suggests the proceedings were reported, although counsel agree they were not.

On March 26, 1980, the judgment was signed and filed.

On March 31, 1980, Rood filed his request to the clerk of the court entitled "DEFENDANT AND APPELLANT'S DESIGNATION OF CLERK'S TRANSCRIPT ON APPEAL."

On April 2, 1980, Watters filed "PLAINTIFFS AND RESPONDENT'S DESIGNATION OF CLERK'S TRANSCRIPT ON APPEAL."

Neither party requested a reporter in order to provide a reviewing court with a transcript of the oral proceedings.

### WHETHER THERE WAS SUBSTANTIAL EVIDENCE

The parties address the issue of whether an enforceable settlement was reached at the judicially supervised mandatory settlement conference on May 31, 1979, with Judge Woolpert and focus their attention on whether there was substantial evidence to support Judge Kirkpatrick's order that the State must comply with the settlement.

■ The law is well settled that an appeal on the clerk's transcript and certain exhibits only is to be treated as an appeal on the judgment roll. (*Crummer* v. *Zalk* (1967) 248 Cal.App.2d 794, 796 [57 Cal.Rptr. 185].)

Since it is impossible to determine from the clerk's transcript what evidence the trial court heard and considered, this court must assume there was substantial evidence to support the order. In *Utz* v. *Aureguy* (1952) 109 Cal.App.2d 803, 806 [241 P.2d 639], the court quoted the oftrepeated rule that it is "'. . . well settled that when an appeal is based upon the judgment roll alone a reversal cannot be ordered except for a fatal error on the face of the judgment.'" In the instant case, no error appears on the face of the record before us.

■ Justice Stone cogently stated the law in *Brockway* v. *Heilman* (1967) 250 Cal.App.2d 807, 810 [58 Cal.Rptr. 772], which is applicable here: "We point out that since this is a judgment roll appeal the following rules apply: Error must be affirmatively shown by the record and will not be presumed on appeal [citation]; the validity of the judgment on its face may be determined by looking only to the matters constituting part of the judgment roll [citation]; where no error appears on the face of a judgment roll record, all intendments and presumptions must be in support of the judgment (Cal. Rules on Appeal Rule 52) [citation]; the sufficiency of the evidence to support the findings is not open to consideration by a reviewing court [citation]; and any condition of facts consistent with the validity of the judgment will be presumed to have existed rather than one which would defeat it [citation]."

## AUTHORITY OF THE TRIAL COURT

■ Appellant argues that there was no compliance with Government Code section 948,[4] and therefore the trial court lacked power to order judgment in favor of plaintiff.

We know of no decisional authority applying section 948 to circumstances such as those of this case.

If we assume that the Legislature had not authorized the compromise of actions by the heads of state agencies, appellant's argument would be compelling; however, the language of the statute is clear that the head of the state agency concerned is authorized to settle actions upon the recommendation of the Attorney General or other attorney authorized to represent the state. The authority exists even though there are no funds for payment, if it is with the approval of the Department of Finance.

---

[4]At the time of this action, Government Code section 948 provided: "The head of the state agency concerned, upon recommendation of the Attorney General or other attorney authorized to represent the state, may settle, adjust or compromise any pending action where, except for an action arising from the activities of the Department of Public Works, the Director of Finance certifies that a sufficient appropriation for the payment of claims exists. Where no funds or insufficient funds for such payment exist, the head of the state agency concerned, upon recommendation of the Attorney General or other attorney authorized to represent the state, may settle, adjust or compromise any pending action with the approval of the Department of Finance. As used in this section, 'state agency' means any office, officer, department, division, bureau, board, commission or agency of the state claims against which are paid by warrants drawn by the Controller."

Appellant seeks to persuade us that the Attorney General lacked authority, citing *Mullan v. State* (1896) 114 Cal. 578 [46 P. 670] and *Bear River etc. Corp. v. County of Placer* (1953) 118 Cal.App.2d 684 [258 P.2d 543]. The latter provides in part: "When the power of a board or public officer is limited to a prescribed method of contracting, the mode prescribed becomes the measure of the power. If the prescribed mode is disregarded, the contract is void and unenforceable." (*Id.*, at p. 689.)

Those cases are distinguishable as the conduct questioned was without authority. In the 'instant case, authority was specifically granted by the State Legislature. The issue is whether it was exercised and, if so, how and in what manner.

Writers have noted: "After litigation has commenced, broad authority to settle or compromise the action is granted by Govt C §§ 948-949."[5] (Van Alstyne, Cal. Government Tort Liability Practice (Cont. Ed.Bar 1980) § 5.40, p. 488.)

The resolution by the trial court of whether there was compliance with section 948 necessarily depends on substantial evidence before that court.

As stated in 6 Witkin, California Procedure (2d ed. 1971) Appeal, section 240, page 4232, "The rule of conflicting evidence necessarily precludes any successful appeal on insufficiency of evidence unless an adequate record is brought up. If the appeal is on the judgment roll alone ... the evidence is conclusively presumed to support the judgment [citation]."

REVIEW OF DISCRETION

■ Appellant contends the trial court abused its discretion in not granting its motion under Code of Civil Procedure section 473.[6] The

---

[5]The legislative policy in favor of delegating claims settlement authority after suit is filed is extremely liberal where a local public entity is involved. (See Cal. Law Revision Com. com. to Gov. Code, § 949, 32 West's Ann. Gov. Code (1980 ed.) p. 625.)

[6]Code of Civil Procedure section 473 provides in relevant part: "The court may, upon such terms as may be just, relieve a party or his legal representative from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect."

motion was made to set aside the order granting judgment on the grounds that Deputy Attorney General Rood made a mistake in not requesting the declaration of Judge Woolpert.[7]

In quoting *Brown* v. *Newby* (1940) 39 Cal.App.2d 615, 618 [103 P.2d 1018], Witkin pointed to the rule "'[T]he showing on appeal is wholly insufficient if it presents a state of facts, a consideration of which, for the purpose of judicial action, merely affords an opportunity for a difference of opinion. An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge. To be entitled to relief on appeal from the result of an abuse of discretion, it must clearly appear that the injury resulting from such wrong is sufficiently grave to amount to a manifest miscarriage of justice. . . .'" (6 Witkin, *op. cit. supra,* at p. 4234.)

There was no abuse of discretion in denying the section 473 motion (*Martin* v. *Cook* (1977) 68 Cal.App.3d 799, 807 [137 Cal.Rptr. 434]) because the mistake was rectified by the receipt of Judge Woolpert's declaration.

## AUTHORITY OF ATTORNEY

■ Appellant argues that its counsel had never obtained approval for the settlement and therefore its counsel lacked authority to bind the principal.

The compromise of an action against a client is serious, and it is thoroughly established that the attorney cannot act against his client's objections, and he has no authority to act without his client's knowledge and express consent. (1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys, § 115, p. 125.) However, an attorney has authority, in the absence of fraud, to bind his client in all matters pertaining to the regular conduct of his case. (*Gagnon Co., Inc.* v. *Nevada Desert Inn* (1955) 45 Cal.2d 448, 460 [289 P.2d 466].) The presumption is that the attorney has authority to compromise his client's action which he is prosecuting

---

[7] In appellant's moving papers the only mistake alleged was that Deputy Attorney General Rood mistakenly failed to obtain a letter from Judge Woolpert regarding the judge's recollection of whether the settlement offer was conditional.

This letter was subsequently obtained in the guise of a declaration wherein Judge Woolpert stated that he had no recollection of the proceedings. That declaration was presented to the trial court which ordered judgment for respondent and thereby implicitly denied the section 473 motion.

and even to dismiss an action with prejudice. (*Ibid.*) The apparent conflict between the rule that ordinarily an attorney has no authority to surrender his client's rights is reconciled with the presumption of authority on the theory that the presumption is rebuttable. (*Id.*, at pp. 460-461.) Thus it is a matter for the trial court to resolve.

■ In the record before us, there is no evidence that any disclaimer was made by the appellant of the Attorney General's authority. The appellant has remained silent.

This court cannot hold Judge Kirkpatrick to be in error on the record before us. The record before him shows the unequivocal minute order of settlement, a minor's compromise, plaintiff's compromise of actions with other parties, Levy's and Watters' affidavits showing settlement, and absolutely no word from the head of the state agency concerned. In view of these circumstances, it was not error to enter judgment enforcing the settlement.

### JUDICIALLY SUPERVISED SETTLEMENT

In the instant case, appellant contends that *Hastings* v. *Matlock* (1980) 107 Cal.App.3d 876 [166 Cal.Rptr. 229] is controlling, and that *Gregory* v. *Hamilton* (1978) 77 Cal.App.3d 213 [142 Cal.Rptr. 563] should not be followed. Those cases are not alike in factors that are very important. In *Gregory*, a settlement was reached before the judge in a mandatory judicially supervised settlement conference. In *Hastings*, the subject matter was an alleged agreement reached orally between counsel out of court which, according to that case, disclosed "... a number of material factual disputes concerning both the existence and the terms of the alleged agreement." (*Hastings, supra*, at p. 881 and fn. 3.)

■ In *Greyhound Lines, Inc.* v. *Superior Court* (1979) 98 Cal.App. 3d 604, 608 [159 Cal.Rptr. 657], the court noted, "The public policy of this state supports the pretrial settlement of lawsuits. [Citations.] It is common knowledge in the legal profession that judicially supervised settlement conferences are critical to the efficient administration of justice in California. When the material terms of the settlement are agreed upon at the conference, the agreement must be enforced by the court."

From the clerk's transcript, the trial judge could reasonably infer that the terms of the settlement were firm and unconditional (see Rood's

declaration, *ante*) and that Rood had authority from the unequivocal minute order of more than six months standing which had been served on Rood one week after its entry.

In the absence of fraud, the law looks with favor upon the voluntary settlement of actions involving doubtful rights and controversies. (*Cassin v. Financial Indemnity Co.* (1958) 160 Cal.App.2d 631, 636 [325 P.2d 228].)

Here, there is no evidence of fraud.

DISPOSITION

The judgment is affirmed.

ANDREEN, J.—I concur in the judgment and find no fault in the reliance of court and counsel on *Gregory* v. *Hamilton* (1978) 77 Cal.App.3d 213 [142 Cal.Rptr. 563]. The court signed its order on March 3, 1980. *Hastings* v. *Matlock* (1980) 107 Cal.App.3d 876 [166 Cal.Rptr. 229], cited by the dissent, was filed July 1, 1980, and published in the advance sheet dated July 31, 1980.

At the time of the decision below, *Gregory* was law, and was properly invoked by the trial court under the doctrine of stare decisis. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal. Rptr. 321, 369 P.2d 937].) The fact that *Hastings* came along later and demonstrated the fallacy in *Gregory* does not change this. "Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction . . . ." (*Id.*, at p. 455.)

BROWN (G. A.), P. J.—I dissent and would reverse the judgment. There are two reasons the judgment should not stand. First, procedurally the proper method of enforcing the settlement is by a motion for summary judgment, not a nonstatutory motion. Secondly, the express provisions of Government Code section 948 prevent the Attorney General from entering into a final and binding settlement of the plaintiff's case unless the provisions of that section are in fact complied with, and the evidence herein does not demonstrate that the approvals required were procured.

Taking up the procedural problem first, it is true that one division of the Court of Appeal of the First Appellate District has held that a judi-

cially supervised settlement may be enforced by a nonstatutory motion. (See *Gregory* v. *Hamilton* (1978) 77 Cal.App.3d 213 [142 Cal.Rptr. 563].) However, later, another division of the same district in a well-reasoned decision criticized[1] *Gregory* and held the proper procedure is by way of a motion for summary judgment, by separate suit in equity or, in the event the defendant is attempting to enforce settlement, by way of affirmative defense. (See *Hastings* v. *Matlock* (1980) 107 Cal. App.3d 876 [166 Cal.Rptr. 229].) In my opinion, the reasoning of the latter opinion rests on a solid legal foundation and is irrefutable. As *Hastings* points out, there are no nonstatutory motions in California, those judicially developed aberrations having been finally buried with *Pianka* v. *State of California* (1956) 46 Cal.2d 208, 211 [293 P.2d 458], and *Vesely* v. *Sager* (1971) 5 Cal.3d 153, 167-168 [95 Cal.Rptr. 623, 486 P.2d 151]. It is now too late to again authorize deviation from the principles of *Pianka* and *Vesely* in the name of judicial expediency.

Because the motion papers filed herein do not conform with the technical requirements of a motion for summary judgment, including the declarations filed in support of and in opposition to such a summary judgment motion, we cannot treat the motion as one for summary judgment. (See Code Civ. Proc., § 437c.) Moreover, a material issue of fact existed which would, in any event, require a denial of the motion.

The second ground for reversal is the express requirements of Government Code section 948. At the time of the events herein that section provided:[2] "The head of the state agency concerned, upon recommendation of the Attorney General or other attorney authorized

---

[1]Referring to *Gregory*, the *Hastings* court said: "The reasoning underlying the *Gregory* holding is tenuous. Transformation of a special defense into a claim for specific performance with attendant deprival of jury verdict or written court findings is achieved *ad hominem*. (*Id.*, at p. 219.) Although the *Gregory* court recognized that specific performance actions frequently involve proof of mixed legal and equitable questions, it dismissed the issue of the need for a jury trial with the circular argument that none is required since no legal relief is sought aside from enforcement of the disputed agreement. Finally, reliance on the single authority cited (5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 179, p. 3749) is clearly misplaced. (*Id.*, at p. 220.) It is simply too long a leap from that commentator's reasoned analysis justifying *post* judgment relief by motion, based upon extrinsic fraud or mistake, to a conclusion that the *judgment itself* may be obtained in similar summary fashion notwithstanding the absence of statutory or other applicable authority." (*Hastings* v. *Matlock, supra*, 107 Cal.App.3d at pp. 882-883, fn. 6.)

[2]In 1980 section 948 was amended effective January 1, 1981. The amendment is irrelevant to the case at bench as it only deleted the exception relating to activities of the Department of Public Works referred to in the first sentence.

to represent the state, may settle, adjust or compromise any pending action where, except for an action arising from the activities of the Department of Public Works, the Director of Finance certifies that a sufficient appropriation for the payment of claims exists. Where no funds or insufficient funds for such payment exist, the head of the state agency concerned, upon recommendation of the Attorney General or other attorney authorized to represent the state, may settle, adjust or compromise any pending action with the approval of the Department of Finance. As used in this section, 'state agency' means any office, officer, department, division, bureau, board, commission or agency of the state claims against which are paid by warrants drawn by the Controller."

Section 948 was enacted in 1963. There can be no doubt that prior to its enactment the Attorney General had power to compromise litigation. Thus, the Attorney General himself stated in a 1941 opinion: "'I am of the opinion that the Attorney General has the power to compromise litigation, or stipulate to judgment therein, when the rights of the State are in doubt and in honest dispute and he believes that such compromise or stipulation will best serve the interests of the State. This power is incidental to the general power of the Attorney General to handle and control litigation and is almost unanimously recognized by the courts of the United States and of the various states which have considered the question.'" (56 Ops.Cal.Atty.Gen. 503, 504 (1973), quoting from Ops.Cal.Atty.Gen. NS 3174a (1941).) (See also, *Yanchor* v. *Kagan* (1971) 22 Cal.App.3d 544, 549 [99 Cal.Rptr. 367], describing generally the authority of an attorney to act on behalf of his client.)

However, the enactment of section 948 expressly made the Attorney General's authority to settle any pending action conditional. His authority to settle pending actions requires obtaining the approval of the head of the state department involved and a determination by the Department of Finance that there is money available to satisfy the settlement.

The Law Revision Commission comment to section 948 states: "This section specifies the *conditions* under which a pending action against the State may be settled or compromised. There is no comparable provision in the existing statutes." (Cal. Law Revision Com. com. to Gov. Code, § 948, 32 West's Ann. Gov. Code (1980 ed.) p. 624, italics added.)

I perceive that the purpose of the statute is to provide a control over disbursements from the public treasury and tends to insure the proper use of public funds. Thus, since 1963 the Attorney General has not had carte blanche authority to settle cases in litigation, his authority being substantially constricted by section 948. Before a settlement is valid the necessary approvals must be obtained. As in the case of other public officers and agents of the state, the state is not bound by acts of the Attorney General in excess of his authority, and one who deals with him is bound at his peril to ascertain the extent of his power to bind the state. As was said in *Board of Administration* v. *Ames* (1963) 215 Cal.App.2d 215, 230 [29 Cal.Rptr. 917]: "'One who deals with a public officer stands charged presumptively with a full knowledge of that officer's powers and is bound at his peril to ascertain the extent of his power to bind the government of which he is an officer, and any act of an officer to be valid must find express authority in the law or be necessarily incidental to a power expressly granted.' (*Bear River etc. Corp.* v. *County of Placer* (1953) 118 Cal.App.2d 684, 690 [258 P.2d 543].)"

In the case at bench the amount and share of each defendant is conceded. It follows that the only issue of fact to be ascertained by the trial court in any proceeding instituted to enforce the alleged settlement against the state is that of whether the head of the department, Parks and Recreation, and the Department of Finance had in fact approved the settlement.

It is recognized that this conclusion would substantially deter and frustrate settlements of lawsuits and that such an effect runs counter to the oftstated and enlightened principles that settlements are highly favored in the law. Nor would this result aid the efficient administration of justice. However, in the face of the express terms of section 948, I do not believe the court has any alternative. An appropriate solution lies with the Legislature, not the courts.