Filed 11/20/14  Bank of America v. World Trading CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| BANK OF AMERICA, N.A.,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>WORLD TRADING, INC., et al.,<br><br>Defendants and Appellants. | B248973<br><br>(Los Angeles County<br>Super. Ct. No. GC038299) |

APPEAL from an order of the Superior Court of Los Angeles County.  C. Edward Simpson, Jr., Judge.  Dismissed as to appellants Robert Tieger and Tieger Enterprises, Inc., and affirmed as to World Trading, Inc.

Sacha V. Emanuel; Lieber Williams & Labin, Stanley P. Lieber for Defendants and Appellants.

Richard D. Simpson, Jr.; Severson & Werson, Kerry W. Franich for Plaintiff and Respondent.

_____

A dispute between appellant World Trading, Inc. and respondent Bank of America over title to residential property was sent to a court supervised settlement conference. At the conclusion of the conference, the court accepted settlement terms specifying, among other things, that Bank of America would relinquish its interest in the property upon appellant paying $250,000 within 18 months, and that failure to pay would result in a quiet title judgment in favor of Bank of America. When Bank of America received no payments from appellant for 30 months, it moved to enforce the settlement agreement and to quiet title. The trial court granted the motion and entered judgment quieting title.

On appeal, World Trading contends the settlement agreement is unenforceable because (1) it included a material term to which World Trading had not agreed and (2) Bank of America failed to perform one of its obligations.

We affirm.

## BACKGROUND

Robert Tieger wholly owns World Trading and Tieger Enterprises, Inc. Tieger Enterprises entered into an agreement to sell a single family residence it owned on Oakwood Avenue in Arcadia (hereafter the Oakwood property) to Victor and Silvia Neander. To satisfy the down payment, Victor's mother, Donna Mae Neander, executed a deed of trust to a property on Colorado Boulevard in Arcadia (hereafter the Colorado property) in favor of Tieger Enterprises. Donna Mae had previously executed a deed of trust to the Colorado property in favor of Bank of America on an unrelated loan. She later conveyed the Colorado property outright to Tieger Enterprises in exchange for a price reduction on the Oakwood property. On June 16, 2004, Tieger Enterprises conveyed the Colorado property to World Trading. Meanwhile, on December 30, 2003, Bank of America recorded a deed of trust on the Colorado property to secure an unrelated loan to Donna Mae.

After the Neanders defaulted on both loans secured by deeds of trust to the Colorado property: the one taken in exchange of the price reduction on the Oakwood property and the preceding loan made to Donna Mae by Bank of America, Bank of America foreclosed and initiated eviction proceedings against a tenant of World Trading

2

who occupied the property. A dispute subsequently arose between World Trading and Bank of America over title to the Colorado property.

The court ordered the parties to attend a mandatory settlement conference, which took place over three days: February 10, February 25, and March 2, 2010. Tieger and Bank of America's counsel attended the February 10 conference. Counsel for Tieger and World Trading attended the February 25 conference, and a Bank of America management representative participated by speaker phone. Only Bank of America's counsel attended the March 2 conference.

At the February 10 conference, Bank of America agreed to "relinquish all interest in the Colorado Boulevard Property to World Trading . . . upon payment of $250,000" by World Trading "no later than . . . 18 month[s]" following the parties' consent on the record to the settlement agreement. No interest would accrue on the $250,000 during the first 12 months of the 18 month term, but would start to accrue "at an annualized note rate of 6.25 percent" on the first day of the 13th month with "interest payments only . . . due on the first day of each month during that last six month period." If any payment was more than 30 days late, "a stipulation for entry of judgment [would] be entered . . . in favor of Bank of America quieting title to the Colorado property." Bank of America agreed not to "interfere with Mr. Tieger's right or ability to obtain . . . secondary financing, and [would] reasonably cooperate in any effort that he undertakes to get such financing . . . to be used to repair and/or rehabilitate the property to enhance its marketability and its market value," but "Bank of America . . . [would] not subordinate or in any way impact its claim of ownership or its priority claim with respect to any junior financing that Mr. Tieger may seek or may obtain." Tieger agreed to assign the deed of trust obtained to the Colorado property from Donna Mae to Bank of America as additional security to Bank of America in the event the $250,000 and any interest payments due were not paid. The parties agreed the court would retain jurisdiction to enforce any term of this settlement agreement and enter judgment as necessary.

Bank of America, through its counsel, gave preliminary consent to the settlement, pending formal approval by a bank management committee. On February 25, the bank

3

management committee, represented telephonically by Jacqueline Toboloski, consented to the settlement, with one modification: the 6.25 percent annual interest rate would accrue "daily, payable in full at the time either the property is sold or up to the first day of the 19th month." As Tieger was not present during this conference, the court instructed Adrian Zamora, World Trading's counsel, to contact him and confirm his consent to the modification. World Trading's counsel later sent Bank of America two emails stating that Tieger agreed to the modification. The court entered the emails into evidence on March 2, accepted the settlement terms, and ruled it was "satisfied that Mr. Tieger, not only is aware of all these terms and conditions, but has agreed to all terms and conditions, both those exactly stated and those implied. [¶] And that he . . . verbally agreed to those conditions, and acquiesced to his attorney clearing up the issue of the . . . accrual on the interest." The court set an order to show cause re dismissal (OSC) for May 7, 2010.

World Trading made no payments to Bank of America during the 18-month period following the settlement. Bank of America then granted a 12-month extension, but World Trading made no payments during the additional 12 months either.

In June 2012, World Trading initiated a trustee's sale on the Colorado property, but the court granted Bank of America's ex parte application for a temporary restraining order to stop the foreclosure. Bank of America then moved to enforce the 2010 settlement pursuant to section 664.6 of the Code of Civil Procedure.

In October 2012, the trial court found World Trading failed to comply with the terms of the 2010 settlement agreement, granted Bank of America's motion to enforce the settlement, and entered a quiet title judgment in favor of Bank of America. Tieger, Tieger Enterprises, and World Trading appealed, contending the settlement is unenforceable because there was no meeting of the minds as to a material term.

During the pendency of the appeal, Bank of America requested judicial notice of material indicating World Trading's corporate charter was suspended in Nevada, its state of incorporation.[1]

On July 28, 2014, we directed the parties to file letter briefs addressing whether the appeal should be dismissed due to World Trading's inactive status. Only Bank of America responded.

On August 27, 2014, we issued an order to show cause why this appeal should not be dismissed on the grounds that: (1) Tieger and Tieger Enterprises had no standing; (2) World Trading could no longer prosecute the appeal because its corporate status had been revoked; and (3) World trading abandoned the appeal by failing to respond to our July 28 request for briefing. Appellants filed a letter brief that indicated they had not abandoned the appeal, but was otherwise nonresponsive. On September 25, 2014, we received a letter from World Trading's counsel indicating its corporate charter had been reinstated. No party has contested the truth of that representation so we accept it.

## DISCUSSION

First, we address whether Tieger, Tieger Enterprises, and World Trading have standing to appeal. Section 902 of the Code of Civil Procedure provides that any party "aggrieved" by a judgment or order may appeal. (Code Civ. Proc., § 902.) In an action to quiet title to real property, a party is aggrieved, within the meaning of Code of Civil Procedure section 902, only if it claims an interest in the property in controversy. (*Landfield v. Gardner* (1948) 88 Cal.App.2d 320, 323.)

It is undisputed that in 2003, Donna Mae Neander executed a grant deed to the Colorado property in favor of Tieger Enterprises. It is also undisputed that Tieger Enterprises subsequently conveyed its interest in the Colorado property to World Trading by a grant deed recorded on October 4, 2004. At no point did Tieger himself claim an interest in the Colorado property. Therefore, under section 902 of the Code of Civil

---

[1] Bank of America's request for judicial notice regarding World Trading's suspended Nevada corporate charter is granted.

5

Procedure, only World Trading, the latest recipient of a grant deed to the Colorado property, may claim an interest in the property and appeal the trial court's judgment. Consequently, we dismiss the appeal as to Tieger and Tieger Enterprises due to lack of standing.

Next, we address World Trading's contention that the trial court erred in enforcing the 2010 settlement agreement. California's public policy favors enforcement of judicially supervised settlements where the parties have agreed to the settlement's material terms. (*Greyhound Lines, Inc. v. Superior Court* (1979) 98 Cal.App.3d 604, 608.) A court, upon motion, may enter judgment pursuant to a settlement agreement "[i]f parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof." (Code Civ. Proc., § 664.6; *Greyhound Lines, Inc. v. Superior Court*, *supra*, 98 Cal.App.3d at p. 608; *Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1182-1183.) A settlement made in a writing signed by the parties, or one made orally by the parties before the court is enforceable. (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 905.)

In ruling on a motion to enforce an oral settlement agreement, the trial court should determine whether "(1) the material terms of the settlement were explicitly defined, (2) the supervising judicial officer questioned the parties regarding their understanding of those terms, and (3) the parties expressly acknowledged their understanding of and agreement to be bound by those terms." (*In re Marriage of Assemi*, *supra*, 7 Cal.4th at p. 911.) A settlement agreement is enforceable if, at the time it was entered into, there was a meeting of the minds as to its material terms. (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 797; *Greyhound Lines, Inc. v. Superior Court*, *supra*, 98 Cal.App.3d at p. 608.)

To determine whether a binding settlement agreement exists, the trial court may consider declarations, transcripts of the oral settlement, and live testimony. (*In re Marriage of Assemi*, *supra*, 7 Cal.4th at p. 911.) A determination that the parties entered into a binding settlement agreement is reviewed for abuse of discretion, and will be upheld if supported by substantial evidence. (*Ibid.*)

6

In *Greyhound Lines*, Olsen, a car passenger, sued the car's driver, Hurson, and Greyhound for injuries sustained in a car-bus collision. (*Greyhound Lines, Inc. v. Superior Court*, *supra*, 98 Cal.App.3d at p. 606.) After several pretrial settlement conferences, Greyhound and Hurson agreed to pay Olsen a combined amount of $39,500 and sent her the settlement agreement and a release that contained a "hold harmless" clause. (*Ibid.*) Olsen refused to sign the release or the agreement. (*Ibid.*) The court found she was aware of the settlement amount and had orally agreed to accept it, but because she refused to sign the release, the settlement could not be enforced. (*Id.* at p. 607.) The appellate court agreed, ruling that because the release imposed a potentially substantial obligation on Olsen, her refusal to sign it indicated she had not consented to the settlement. (*Id*. at pp. 607-608.)

Here, it is undisputed that on February 10, 2010, World Trading and Bank of America agreed orally in the presence of the trial court that World Trading would pay Bank of America $250,000 within 18 months, and that interest would accrue on the unpaid amount at an annual rate of 6.25 percent beginning on the first day of the 13th month. However, on February 25, 2010, Bank of America proposed and World Trading's counsel assented to an additional term: The interest would accrue daily.

World Trading contends this additional term fails to satisfy Code of Civil Procedure section 664.6 because World Trading did not agree to it either orally before the court or in writing out of court. It is correct. When the additional term was proposed on February 25, 2010, World Trading was not present—only its attorney was. And when Tieger purportedly agreed to the term later, out of court, he did not do so in writing.

However, the additional term is immaterial. The calculation is the same whether interest is said to accrue at an annual rate or "daily," absent some sort of compounding, which no party contends would occur here. World Trading contends for the first time in its reply brief that it would be required to pay more under a "daily" scheme than an annual one, but makes no attempt to explain why. Absent such a showing, we cannot conclude the term added at the February 25 conference was material. The parties agreed

orally in court to every *material* term of the settlement, thus satisfying Code of Civil Procedure section 664.6.

World Trading contends Bank of America represented it would clear title to the Colorado property but then refused to do so, which prevented World Trading from selling the property and made it impossible to pay the $250,000 settlement amount. No such representation was made part of the agreement on the record. On the record, Bank of America agreed to relinquish its interest in the Colorado property only "upon payment of $250,000," i.e., after the money was paid. Although World Trading agreed to seek secondary financing and Bank of America agreed it would "not interfere" with that effort, nothing obligated Bank of America to clear title or otherwise assist in securing financing. On the contrary, the agreement provided that Bank of America would not "subordinate or in any way impact its claim of ownership" to the property. The sale of the Colorado property and any title clearance that would have been necessary to effect it therefore were not conditions precedent to World Trading paying Bank of America the $250,000.

Tieger declared that Bank of America's counsel, Richard Simpson, promised he would "clear the title," but gives no account of when or under what circumstances such a representation was made or when the proposed clearance was to occur. For all we can determine, the alleged statement was made long after the settlement agreement, while World Trading was attempting to sell the property. At any rate, the lawyer's off-record statement did not become part of the agreement on record, and therefore could not modify Bank of America's obligations. On the contrary, such a representation would have contradicted Bank of America's agreement to suborn its interest in the property only upon receiving payment, and would subvert the purpose of the settlement.

**DISPOSITION**

The order is affirmed.  The appeal is dismissed as to appellants Robert Tieger and Tieger Enterprises.  Respondent is to recover costs.

NOT TO BE PUBLISHED.


                                                        CHANEY, J.


We concur:



ROTHSCHILD, P. J.



MILLER, J.[*]

_____

[*]   Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.