[No. B154493. Second Dist., Div. Six. Oct. 24, 2002.]

CITY OF ORANGE et al., Plaintiffs and Respondents, v.
SAN DIEGO COUNTY EMPLOYEES RETIREMENT ASSOCIATION,
Defendant and Appellant.

## COUNSEL

John J. Sansone, County Counsel, and Judith A. McDonough, Deputy County Counsel, for Defendant and Appellant.

Howarth & Smith, Don Howarth and David K. Ringwood for Plaintiffs and Respondents.

## OPINION

**YEGAN, J.**—San Diego County Employees Retirement Association appeals from the judgment entered after jury trial in favor of 14 governmental entities including the City of Orange. Respondents were awarded $950,000 damages for appellant's breach of a settlement. The agreement, which was not in writing, was based on an oral option contract requiring appellant to hold open its settlement offer to respondents.

Appellant contends that all contracts entered into by the City of Orange must be in writing and signed by the mayor. Because the option contract and settlement agreement were never reduced to signed writings, appellant maintains that they were void and unenforceable as a matter of law. In addition, appellant contends that the doctrine of election of remedies precluded respondents from proceeding on their breach of contract claim. We affirm.

### Facts and Procedural History

All of the parties engaged the services of the same investment adviser. He participated in fraudulent transactions causing respondents to suffer substantial losses. Respondents claimed that the investment adviser had transferred

funds from their accounts to the accounts of appellant and other clients. Respondents brought an action against appellant and the other clients seeking restitution.

The law firm of Howarth & Smith represented respondents. Suzelle Smith was its "lead lawyer." Miriam Brewster, a senior deputy county counsel, conducted negotiations on appellant's behalf. During a telephone conversation on October 8, 1998, Brewster offered to settle the lawsuit as follows: Appellant would pay respondents $950,000 for dismissal of the lawsuit. Smith replied that she did not have authority to accept the offer, but she would recommend that her clients accept it. Smith told Brewster that "fourteen governmental bodies . . . had to be assembled, [and] it could take as much as 30 to 60 days for everybody to get together, for them to vote and give their approval." Brewster agreed to keep the offer open until all of the governmental entities had voted. But she insisted that Smith agree in return to a "litigation standstill" whereby all litigation activities by both parties would cease while respondents were considering the offer. Smith so agreed.

On October 19, 1998, Smith's office informed Brewster that it had received written approval from 11 of the 14 respondents. Two of the respondents had given oral approval. Smith's office said that the remaining respondent, a Coachella governmental entity (hereafter Coachella), was scheduled to vote on the matter on November 12, 1998. Brewster asked for a copy of respondents' standard settlement agreement. On October 22, 1998, Smith's office mailed a copy to Brewster.

On October 22, 1998, the trial court granted a motion for summary judgment made by appellant's codefendant, First Savings Bank of Hegewisch (hereafter Hegewisch). On October 23, 1998, Brewster wrote a letter to Smith purporting to withdraw the settlement offer. On October 27 or 28, 1998, Smith and Brewster conversed by telephone. Brewster said that, in view of the granting of Hegewisch's summary judgment motion, appellant's offer was excessive. Brewster wanted to "start renegotiating." Smith refused. She maintained that they "had a deal" and that appellant's offer was still open.

Smith contacted Coachella, which called a special session to vote on appellant's offer. On October 29, 1998, Coachella approved it. That same day, Smith wrote a letter to Brewster confirming that all 14 respondents had accepted the settlement offer. Smith stated: "When we receive your client's signature on the settlement agreement, which we have already sent you, we will obtain signatures from our clients, prepare and send the dismissal for [appellant], in exchange for the settlement check."

Appellant insisted that the offer had been withdrawn and refused to go forward with the settlement. On December 24, 1998, the trial court granted appellant a summary judgment denying recovery to respondents on a restitution theory. This judgment was neither premised upon nor related to the settlement agreement. Respondents appealed. In an unpublished opinion, the Court of Appeal for the Second Appellate District, Division One, affirmed the summary judgment. (*City of Orange v. Dallas County* (Apr. 6, 2000, B128701).)[1]

Thereafter, respondents filed the present action against appellant for breach of the settlement agreement. The complaint alleged that appellant's settlement offer was irrevocable, so that a binding settlement agreement was formed when respondents notified appellant that they had accepted its offer.

Respondents tried the case on the theory that counsels' telephone conversation of October 8, 1998, constituted a valid option contract. The jury returned a special verdict. It found: (1) the parties had agreed that the settlement offer would be held open until all respondents had voted on it; (2) this agreement was supported by consideration; (3) respondents had reasonably relied to their detriment on the agreement; (4) the settlement offer was open and accepted by respondents without change within a reasonable time after appellant had made it; and (5) appellant's breach of the settlement agreement had caused respondents to suffer damages of $950,000.

### Standard of Review

The parties agree that the standard of review is independent or de novo review because the appeal involves purely legal issues based on undisputed facts. (See *Edgemont Community Service Dist. v. City of Moreno Valley* (1995) 36 Cal.App.4th 1157, 1166 [42 Cal.Rptr.2d 823].)

### Option Contract

" '[A]n irrevocable option is a contract made for consideration, to keep an offer open for a prescribed period.' [Citations.]" (*Palo Alto Town & Country Village, Inc. v. BBTC Company* (1974) 11 Cal.3d 494, 499-500 [113 Cal.Rptr. 705, 521 P.2d 1097], italics omitted.) "[W]here there is an option contract, there are two contracts, the option contract and the contract to which it relates." (*Dawson v. Goff* (1954) 43 Cal.2d 310, 316 [273 P.2d 1].) The option contract "is clearly different from the contract to which the

---

[1]As we shall explain, respondents' unsuccessful appeal in No. B128701 did not bar the instant breach of settlement action. (See, *infra,* at pp. 57-59.)

irrevocable offer of the optionor relates, for the optionee by parting with special consideration for the binding promise of the optionor refrains from binding himself with regard to the contract or conveyance to which the option relates. . . . [T]he option contract gives the optionee a right against the optionor for performance of the contract to which the option relates upon the exercise of the option, which the optionor cannot defeat by repudiating the option. [Citations.]" (*Warner Bros. Pictures v. Brodel* (1948) 31 Cal.2d 766, 772-773 [192 P.2d 949, 3 A.L.R.2d 691].)

### *Powers of a General Law City*

■ Orange is a general law city. "The Government Code classifies cities as either 'general law cities' (cities organized under the general law of California) or 'chartered cities' (cities organized under a charter). [Citations.] The powers of a general law city include ' "only those powers expressly conferred upon it by the Legislature, together with such powers as are 'necessarily incident to those expressly granted or essential to the declared object and purposes of the municipal corporation.' The powers of such a city are strictly construed, so that 'any fair, reasonable doubt concerning the exercise of a power is resolved against the corporation.' [Citation.]" [Citations.]' [Citation.] . . . [A] general law city . . . must comply with state statutes that specify requirements for entering into contracts. [Citations.]" (*G. L. Mezzetta, Inc. v. City of American Canyon* (2000) 78 Cal.App.4th 1087, 1092 [93 Cal.Rptr.2d 292] (hereafter *Mezzetta*).)

### *The Oral Option Contract Was Enforceable*

### A.  *Appellant's Contention*

■ Appellant contends that the option contract with Orange was void and unenforceable because it was not in writing and signed by the mayor. If appellant is correct, the option contract with the other respondents was also a nullity. The parties intended to negotiate a "global settlement" that would resolve all claims by all respondents. In the absence of an enforceable option contract, Brewster's letter of October 23, 1998, effectively revoked appellant's settlement offer. ■ "[A]n offer may be revoked by the offeror any time prior to acceptance. [Citations.]" (*T. M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, 278 [204 Cal.Rptr. 143, 682 P.2d 338].)

■ Appellant argues that Government Code section 40602[2] and Orange Municipal Code provisions require that all contracts entered into by Orange

---

[2]All statutory references are to the Government code unless otherwise stated.

be in writing and signed by the mayor. Section 40602, subdivision (b), provides that the mayor shall sign "[a]ll written contracts and conveyances made or entered into by the city." However, "[t]he legislative body may provide by ordinance that the instruments . . . be signed by an officer other than the mayor." (§ 40602.) Section 3.08.095 of the Orange Municipal Code provides in relevant part: "Unless another officer is authorized to do so under this chapter or any other provision of this code or by resolution of the City Council, all contracts and conveyances shall have the prior approval of the City Council and shall be executed by the Mayor and shall be approved as to form by the City Attorney. . . ." Orange Municipal Code section 2.22.010, subdivision E, provides that the city attorney shall "[p]repare for execution all contracts and instruments to which the City is a party . . . ." Orange Municipal Code section 2.04.250, subdivision B, requires that all "contract documents" be "approved as for form and legality by the City Attorney" before presentation to the city council.

B.  *Mezzetta Is Distinguishable*

As authority for its argument that these statutes precluded Orange from entering into the oral option contract, appellant relies on *Mezzetta, supra,* 78 Cal.App.4th 1087. In *Mezzetta* the appellate court concluded that similar municipal code provisions together with section 40602 precluded the general law City of American Canyon from entering into an oral agreement. The agreement obligated the city to provide the plaintiff with a wastewater discharge system. The court reasoned: "[I]mplicit in the relevant statutes, when read together, is the requirement that contracts with the City be in writing, approved by the city council, approved as to form by the city attorney, and signed by either the mayor or the city manager. [Citations.]" (*Mezzetta,* at p. 1093.) The court held that the oral agreement was void because it failed to meet this requirement: "[B]ecause the statutes in question specifically set forth the ways in which the City may enter into contracts, any other methods of contract formation—even though not explicitly prohib- ited by the statutes—are invalid. [Citations.] . . . To conclude otherwise would undermine the City's clear intent to ' "ensure that expensive decisions are not hastily made. [These statutes] create[] a broad base of authority by requiring [contract] approval by a number of different individuals. No single individual has absolute authority to bind the municipality; many parts of the city government must work together." ' [Citations.]" (*Id.,* at pp. 1093-1094.)

*Mezzetta* is distinguishable. The oral agreement in *Mezzetta* imposed a financial burden on the city. Therefore, it was important that the city strictly adhere to the statutory procedure for contract formation. The oral option

contract, on the other hand, imposed no financial burden on Orange. The sole consideration for the option was Orange's agreement to cease litigation activities while appellant's offer was being considered. The litigation stand-still would save the city money if the offer were accepted.

Another distinction is that in *Mezzetta* a private party was seeking to enforce the oral agreement against the city. Here, in contrast, it is the city that is seeking to enforce the oral option contract. As the *Mezzetta* court observed, "restrictions on a municipality's power to contract . . . are designed to protect the public, not those who contract with the municipality." (*Mezzetta, supra,* 78 Cal.App.4th at p. 1093, citing 10 McQuillin, Municipal Corporations (3d ed. 1999 rev.) § 29.05, p. 255.) Appellant is seeking to use these restrictions to protect itself against the enforcement of an oral option contract beneficial to the municipality.

### C.   *The Purpose of the Relevant Statutes and Public Policy Support the Validity of the Oral Option Contract*

■   "Where, as here, the issue presented is one of statutory construction, our fundamental task is 'to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' [Citations.] We begin by examining the statutory language because it generally is the most reliable indicator of legislative intent. [Citation.] We give the language its usual and ordinary meaning, and '[i]f there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs.' [Citation.] If, however, the statutory language is ambiguous, 'we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.' [Citation.]" (*Allen v. Sully-Miller Contracting Co.* (2002) 28 Cal.4th 222, 227 [120 Cal.Rptr.2d 795, 47 P.3d 639].) "In the end, we ' "must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citation.]" (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57].)

■   The language of section 40602 and the Orange Municipal Code provisions do not unambiguously require that every city contract, without exception, be in writing and signed by the mayor. We therefore " 'consider the general purpose of the statute[s], as well as the consequences of alternative constructions, as guides to interpretation.' [Citation.]" (*Dowden v. Superior Court* (1999) 73 Cal.App.4th 126, 133 [86 Cal.Rptr.2d 180].) The purpose of statutes specifying the manner of municipal contract formation is

to " ' "ensure that expensive decisions are not hastily made" ' " and to create " ' "a broad base of authority by requiring [contract] approval by a number of different individuals." ' " (*Mezzetta, supra,* 78 Cal.App.4th at p. 1094.)

The instant oral option contract furthered this statutory purpose. It involved no expenditure of city funds. It gave Orange adequate time to review appellant's offer and secure approval from the appropriate city officials. It ensured that the decision whether to accept the offer would not be hastily made out of fear that the offer might be withdrawn. If the situation changed or new evidence developed, appellant could not repudiate the offer. Orange, in contrast, remained free to reject it and recommence litigation activities.

Thus, Orange had much to gain and little, if anything, to lose from the oral option contract. The purpose of section 40602 and the Orange Municipal Code provisions would be frustrated if the statutes were interpreted to invalidate an oral option contract in these circumstances. Such an interpretation would benefit only the party contracting with the municipality at the public's expense. Accordingly, we conclude that Orange is not precluded from entering into an oral option contract to settle litigation where the city is the optionee and the sole consideration for the option is an agreement to cease litigation activities while the city is considering the settlement offer.

■ Our interpretation is consistent with the "well-established public policy in this state that settlements of litigation are favored and should be encouraged. [Citations.]" (*Villa v. Cole* (1992) 4 Cal.App.4th 1327, 1338 [6 Cal.Rptr.2d 644].) "[S]ettlement agreements ' "are highly favored as productive of peace and good will in the community," ' as well as ' "reducing the expense and persistency of litigation." ' [Citation.] The need for settlements is greater than ever before. 'Without them our system of civil adjudication would quickly break down.' [Citation.]" (*Neary v. Regents of University of California* (1992) 3 Cal.4th 273, 277 [10 Cal.Rptr.2d 859, 834 P.2d 119], superseded by statute on other grounds as stated in *In re Rashad H.* (2000) 78 Cal.App.4th 376, 379 [92 Cal.Rptr.2d 723].) ■ This important public policy would be thwarted if an otherwise valid option contract to settle litigation were unenforceable because it was not in writing.

### D. *Appellant Is Estopped from Denying the Validity of the Oral Option Contract*

■ Even if section 40602 and the Orange Municipal Code provisions required that the option contract be in writing and signed by the mayor, appellant would be estopped from denying the validity of the contract pursuant to the reasoning of *City of Arcata v. Green* (1909) 156 Cal. 759

[106 P. 86]. In *City of Arcata* the board of trustees of the city granted to the defendants the right to construct and operate an electric railroad within city limits. The grant was made on the condition that the defendants also construct and operate an electric railroad between Eureka and Arcata. The defendants failed to perform as required, and the city brought an action to recover on a bond they had posted. Our Supreme Court refused to permit recovery because the city had no power to condition the grant on the defendants' construction and operation of a railroad between Eureka and Arcata. The city could not regulate matters outside of its boundaries. The condition, therefore, was "extraterritorial" and void. (*Id.*, at pp. 763-764.) The city contended "that the defendants, having received the grant which they had sought, are estopped to deny the validity of their undertaking which they gave in consideration of such grant." (*Id.*, at p. 764.) The court held that the doctrine of estoppel was inapplicable because the condition imposed by the city was wholly beyond the scope of its powers. The court stated the following rule (hereafter *Arcata* rule): "A party contracting with a city regarding a subject-matter within the scope of the city's powers may, where he has received the benefit of the contract, be precluded from asserting that the contract was not, on the part of the city, executed in the manner required by law. The doctrine, however, cannot be made to cover contracts entirely beyond the range of the municipal authority." (*Ibid.*)

Unlike the conditional grant in *City of Arcata*, the subject matter of the oral option contract was within the scope of Orange's powers. "[A] municipality has the power to settle and compromise claims in its favor or against it where there is a bona fide reasonable doubt or dispute as to the validity thereof or the amount due with respect thereto. [Citations.]" (*Whitson v. City of Long Beach* (1962) 200 Cal.App.2d 486, 505-506 [19 Cal.Rptr. 668], fn. omitted.) Appellant received the benefits of the litigation standstill. Consequently, pursuant to the *Arcata* rule, it is estopped from asserting the invalidity of the option contract.

In a similar situation, the Court of Appeal applied estoppel principles in *County of Calaveras v. Calaveras County Water Dist.* (1960) 184 Cal.App.2d 276 [7 Cal.Rptr. 396] (hereafter *Calaveras*). In *Calaveras*, contractors agreed to repair county highways damaged by their installation of an improvement to water works. Without authorization from the board of supervisors, the county road commissioner subsequently entered into an oral contract with the contractors whereby the county agreed to furnish labor and material to repair the damaged highways. The contractors agreed to pay the county the reasonable value of the labor and material. They did not pay, and the county brought an action to recover on the contract.

The trial court found in favor of the contractors. It "concluded that the road commissioner did not have authority to enter into the contract by virtue of his office; that his act in entering the contract without the authorization of the board of supervisors was beyond his power; and that therefore the contract was illegal and void." (*Calaveras, supra*, 184 Cal.App.2d at p. 278.) The appellate court reversed, applying the *Arcata* rule. It reasoned: "[W]e are convinced that the county could . . . have entered into such an agreement with respondent contractors. Such an agreement would not be ultra vires in the sense that it was wholly beyond the powers of the county, and the doctrine of estoppel would be applicable. The fact that the contract was actually made by the road commissioner without express authorization by the board of supervisors was at most an irregularity, but it did not render the contract void to the extent that it could not be ratified by the county." (*Calaveras, supra*, 184 Cal.App.2d at p. 283.) The appellate court concluded that the county had ratified the contract by authorizing an action to recover on the contract. Therefore, the "contractors having received the benefits under said agreement are estopped from setting up the defense that said agreement was invalid. Neither reason, authority nor public policy compel or justify a judgment in favor of respondent contractors." (*Id.*, at p. 284.)

The oral option contract was not wholly beyond Orange's power even if it were required to be in writing and signed by the mayor. Orange had the authority to enter into an option contract requiring appellant to hold open its settlement offer. The lack of a writing signed by the mayor was at most an irregularity as to the form and manner of contracting. The city ratified the contract by accepting appellant's offer. It further ratified the contract by initiating the within action for breach of the settlement agreement. Having received the benefits of the litigation standstill under the oral option contract, appellant is estopped from asserting its invalidity. (*Calaveras, supra*, 184 Cal.App.2d at p. 284.)

*Because the Oral Option Contract Was Enforceable, Appellant Was Bound by the Settlement Agreement Formed When Respondents Accepted Its Offer*

█ The jury found that appellant's settlement offer was open and accepted by respondents without change within a reasonable time after appellant had made it. Respondents' acceptance of the offer resulted in a settlement agreement, which was separate from the option contract. (See *Dawson v. Goff, supra*, 43 Cal.2d at p. 316.) Appellant contends that the settlement agreement was void because it was not in writing and signed by Orange's mayor.

Since the oral option contract was enforceable, a written settlement agreement was not required. Upon respondents' acceptance of appellant's irrevocable offer, the settlement agreement was complete and binding upon appellant. "[T]he optionor has irrevocably promised upon the exercise of the option to perform the contract or make the conveyance upon the terms specified in his binding offer. [Citations.] . . . The creation of the final contract requires no promise or other action by the optionor, for the contract is completed by the acceptance of the irrevocable offer of the optionor by the optionee. 'The contract has already been made, as far as the optionor is concerned, but is subject to conditions which are removed by the acceptance.' [Citations.]" (*Warner Bros. Pictures v. Brodel, supra,* 31 Cal.2d at pp. 772-773.)

The oral option contract would be meaningless if appellant's contractual obligations were enforceable only under a written settlement agreement. Appellant cannot avoid these obligations merely by refusing to execute such an agreement.

## *The Doctrine of Election of Remedies Is Inapplicable*

Appellant contends that the doctrine of election of remedies bars respondents' action for breach of the settlement agreement. Appellant argues that, by pursuing their restitution claim in the prior action to a final judgment, respondents "must be deemed to have withdrawn their contract claim . . . ." Appellant relies on *Smith v. Golden Eagle Ins. Co.* (1999) 69 Cal.App.4th 1371 [82 Cal.Rptr.2d 300].

In *Smith* the plaintiffs proceeded to trial on a personal injury cause of action and lost. They subsequently filed a new action for breach of an agreement settling the personal injury action. The plaintiffs admitted that they could have joined the contract claim with the personal injury action. The appellate court held that, by pursuing the personal injury action to a final judgment, the plaintiffs had "elected that remedy over the breach of contract action." (*Smith v. Golden Eagle Ins. Co., supra,* 69 Cal.App.4th at p. 1375.) Having withdrawn the breach of contract claim, the plaintiffs could not revive it after losing the personal injury action. (*Id.,* at p. 1376.)

Appellant's reliance on *Smith* is misplaced. Unlike the plaintiffs in *Smith,* respondents sought to join their breach of contract claim with the underlying action for restitution. On November 9, 1998, respondents moved for leave to file a third amended complaint to add a new cause of action for breach of the settlement agreement. The trial court conducted a hearing on the motion and took the matter under submission. On December 24, 1998, the court granted

appellant's motion for summary judgment without expressly ruling on respondents' motion to amend. On appeal from the summary judgment, respondents contended that the trial court had erroneously denied their motion. The appellate court's opinion states: "The parties agree that [respondents'] motion to amend was effectively denied by the trial court's order . . . granting the motions for summary judgment . . . . (See *Olson v. Superior Court* (1969) 274 Cal.App.2d 311, 314 [79 Cal.Rptr. 136] ['judgment is a final determination of all matters before the court at the time of judgment even though rulings thereon were not expressly made'].)" (*City of Orange v. Dallas County, supra*, B128701.) The appellate court decided that the trial court had not abused its discretion in denying the motion to amend.

Thus, respondents never elected the restitution remedy over the breach of contract remedy. They sought to pursue both remedies concurrently in the prior action, but were precluded from so doing by the trial court's order granting summary judgment. Respondents, therefore, had no choice of remedies in the prior action. The doctrine of election of remedies " ' "has been generally limited to a choice by a party between inconsistent remedial rights, the assertion of one being necessarily repugnant to or a repudiation of the other." [Citation.]' [Citation.]" (*Schumm v. Berg* (1951) 37 Cal.2d 174, 189-190 [231 P.2d 39, 21 A.L.R.2d 1051].)

*Disposition*

The judgment is affirmed. Costs on appeal are awarded to respondents.

Gilbert, P. J., and Coffee, J., concurred.