TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 23-203 |
| of | : | |
| | : | May 18, 2023 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| CATHERINE BIDART | : | |
| Deputy Attorney General | : | |

---

The City of California City has applied to this office for leave to sue KAREN MACEDONIO in quo warranto to remove her from public office as a member of the City Council. The application asserts that Macedonio, while serving on the City Council, assumed a second and incompatible public office as a member of the East Kern Health Care District Board of Directors, in violation of Government Code section 1099, and by doing so forfeited her seat on the City Council.

We conclude that there is a substantial legal issue as to whether Macedonio is simultaneously holding incompatible public offices. Consequently, and because the public interest will be served by allowing the proposed quo warranto action to proceed, the application for leave to sue is GRANTED.

1

# BACKGROUND

The City of California City is a general law city in the County of Kern.[1]  It is governed by a city council comprised of five members.[2]  The East Kern Health Care District (District) provides services, including property management for medical facilities, within a portion of the City.[3]  The District is governed by a five-member board of directors (Board).[4]  In general, city councils and healthcare districts have a wide array of governmental powers that they may use to provide services to their constituents.[5]

While serving a four-year Board term that began in 2018, Macedonio was elected in November 2020 to serve a four-year term on the City Council.  While serving on the Council, Macedonio was re-elected to the Board, and began her current four-year Board term in December 2022.

The City contends that the two offices in question—member of the Council and member of the Board—are legally incompatible under Government Code section 1099, which provides that a public officeholder forfeits office by assuming a second public office that is incompatible with the first, and that the resulting forfeiture of the first office

---

[1] A general law city is one that functions and is organized under state statutes rather than a municipal charter.  (Gov. Code, § 34102; *City of Orange v. San Diego County Employees Retirement Assn.* (2002) 103 Cal.App.4th 45, 52; *Dare v. Lakeport City Council* (1970) 12 Cal.App.3d 864, 866.)

[2] Gov. Code, § 36501, subd. (a); see https://www.californiacity-ca.gov/CC/index.php/departments/city-council (five councilmembers in City of California City including mayor and mayor pro tem), as of May 17, 2023; see also Gov. Code, § 34903 (elected mayor is member of council).

[3] https://www.ekhcd.org/about, as of May 17, 2023 ("District provides property management for four medical facilities in California City").

[4] See Health & Saf. Code, § 32100; https://www.ekhcd.org/board-members, as of May 17, 2023.

[5] See, e.g., Cal. Const., art. XI, § 7 ("city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws"); Gov. Code, §§ 37100 (city council "may pass ordinances not in conflict with the Constitution and laws of the State or the United States"), 37112 (city council "may perform all acts necessary or proper to carry out the provisions of this title" governing cities); Health & Saf. Code, §§ 32121 ("district" powers), 32000.1, subd. (a) ("district" includes healthcare district); see also 104 Ops.Cal.Atty.Gen. 15, 21 (2021) (discussing healthcare district powers).

23-203

is enforceable through a superior court action in quo warranto.[6] Based on the alleged incompatibility, the City requests our permission to file a quo warranto action seeking Macedonio's removal from the City Council, on the ground that her most recent accession to the Board forfeited her position on City Council.[7]

## ANALYSIS

Quo warranto is a civil action in superior court that is used, among other purposes, to challenge an incumbent public official's right or eligibility to hold a given public office.[8] Code of Civil Procedure section 803 authorizes this form of action, stating that it "may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office . . . within this state."[9] In this context, the term "private party" refers to any "individuals or entities other than the Attorney General," including a local government like the City.[10]

When a party seeks to pursue a quo warranto action, it must first apply for and obtain the Attorney General's consent to do so.[11] In determining whether to grant consent, we do not attempt to resolve the merits of the controversy. Rather, we consider (1) whether quo warranto is an available and appropriate remedy; (2) whether the application raises a substantial issue of law or fact that warrants judicial resolution; and

---

[6] Gov. Code, § 1099, subd. (b). All further statutory references in the body are to the Government Code unless stated otherwise.

[7] Although Macedonio has previously served in these two offices, her 2022 reelection and accession to a second term on the Board rendered her seat on the Council the "first office," i.e., the one subject to forfeiture, for purposes of the prohibition against holding incompatible offices. (See *ibid*.; 93 Ops.Cal.Atty.Gen. 104, 104 (2010).)

[8] See Code Civ. Proc., § 803; *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1225; *People ex rel. Pennington v. City of Richmond* (1956) 141 Cal.App.2d 107, 117.

[9] Code Civ. Proc., § 803; see *Rando v. Harris* (2014) 228 Cal.App.4th 868, 873; 97 Ops.Cal.Atty.Gen. 12, 14 (2014).

[10] *People ex rel. Lacey v. Robles* (2020) 44 Cal.App.5th 804, 826; see *id*. at pp. 815, 817.

[11] *Internat. Assn. of Fire Fighters v. City of Oakland* (1985) 174 Cal.App.3d 687, 693-698.

3

(3) whether authorizing the quo warranto action will serve the public interest.[12]  Here, the answer to all three questions is "yes," and we therefore grant leave to sue.

## 1.  Availability of Quo Warranto Remedy

The forfeiture of an incompatible public office is enforceable pursuant to the statute that authorizes a quo warranto action to remove a person who unlawfully holds public office.[13]  As relevant here, a public office includes membership on a governmental board or body, such as California City's City Council and the East Kern Health Care District's Board of Directors.[14]  If those offices are incompatible, as the City alleges, Macedonio "resigned by operation of law" from the Council upon accession to the Board, and is unlawfully holding the office of Councilmember.[15]  Thus, quo warranto is an available and appropriate remedy.

## 2.  Substantial Issue Regarding Incompatibility of Offices

We first examine the law on incompatible offices, then address whether there is a substantial issue of law or fact regarding the incompatibility of the two offices in question.  As we will explain, we conclude that a substantial legal issue exists here.

### *Prohibition on Holding Incompatible Offices*

Section 1099(a) provides that "[a] public officer . . . shall not simultaneously hold two public offices that are incompatible . . . unless simultaneous holding of the particular offices is compelled or expressly authorized by law."[16]  This prohibition "springs from considerations of public policy which demand that a public officer discharge his or her duties with undivided loyalty."[17]  Two offices are legally incompatible if "there is a

---

[12] *Rando v. Harris*, *supra*, 228 Cal.App.4th at p. 879; 72 Ops.Cal.Atty.Gen. 15, 20 (1989).

[13] Gov. Code, § 1099, subd. (b), citing Code Civ. Proc., § 803.

[14] Gov. Code, § 1099, subd. (a); 101 Ops.Cal.Atty.Gen. 81, 83-84 (2018).

[15] 75 Ops.Cal.Atty.Gen. 112, 113-114 (1992); Gov. Code, § 1099, subd. (b); see 98 Ops.Cal.Atty.Gen. 94, 96 (2015) ("a person's assumption of the second incompatible office has the effect of automatically and immediately vacating the person's right to hold the first office," citing *People ex rel Chapman v. Rapsey* (1940) 16 Cal.2d 636, 644).

[16] The enactment of this statute codified the common law; the Legislature expressed its intent that existing judicial and administrative precedent would guide interpretation of the statute.  (Gov. Code, § 1099, subd. (f); Stats. 2005, ch. 254, §§ 1-2.)

[17] 68 Ops.Cal.Atty.Gen. 337, 339 (1985).

4

possibility of a significant clash of duties or loyalties between the offices."[18] We have previously opined that a "significant" clash is one that is not trivial and is more certain than mere chance.[19] When two public offices are incompatible, the "officer shall be deemed to have forfeited the first office upon acceding to the second."[20]

To find that two offices are incompatible based on a significant clash of duties or loyalties, a conflict need not have actually occurred; it is enough that a conflict *might* occur in the regular operation of the statutory plan.[21] Nor is it necessary for a clash of duties or loyalties to occur in all or in the greater part of the official functions.[22] Indeed, "[o]nly one potential significant clash of duties or loyalties is necessary to make offices incompatible."[23]

When two offices are incompatible, the conflicted officeholder may not escape the effects of the prohibition by choosing not "to perform one of the incompatible roles."[24] Instead, under section 1099(b), forfeiture is required.

### *Substantial Issue of Incompatibility*

No law compels or expressly authorizes the simultaneous holding of the offices at issue here. Macedonio contends otherwise, pointing to a 2021 District resolution purportedly authorizing the simultaneous holding of the two offices.[25] As the Court of Appeal stated in *People ex rel. Lacey v. Robles*, however, such a "resolution is not law for purposes of Section 1099."[26] Rather, section 1099's reference to "law" is "best understood" as referring to a *state* law; and even if the term could be understood to allow

---

[18] Gov. Code, § 1099, subd. (a)(2).

[19] 104 Ops.Cal.Atty.Gen., *supra*, at p. 20; 93 Ops.Cal.Atty.Gen., *supra*, at p. 108.

[20] Gov. Code, § 1099, subd. (b).

[21] 98 Ops.Cal.Atty.Gen., *supra*, at p. 96.

[22] *People ex rel. Chapman v. Rapsey*, *supra*, 16 Cal.2d at pp. 641-642.

[23] 85 Ops.Cal.Atty.Gen. 199, 200 (2002).

[24] 67 Ops.Cal.Atty.Gen. 409, 414 (1984), quoting 3 McQuillin, Municipal Corporations (rev. ed. 1973) § 12.67, pp. 295-296.

[25] We are informed that the District's Board of Directors approved and adopted Resolution No. 21-09-01, amending Section 1-3.007 of the District's Administrative Code to include the following language: "The District finds membership on the Board of Directors of the East Kern Health Care District is not an incompatible office with the City Council of California City."

[26] *People ex rel. Lacey v. Robles*, *supra*, 44 Cal.App.5th at p. 822.

local laws to authorize otherwise incompatible dual office-holding, "all of the affected office-holding local jurisdictions" would need to enact such a law.[27]  The City's assertions of incompatibility indicate that it has not done so, and Macedonio certainly has not claimed that it has.

Moreover, although we do not seek to resolve the merits of this particular controversy, we nonetheless recognize that a prior Attorney General opinion has concluded that offices of the same nature as those that are at issue here—councilmember and healthcare district board member—are incompatible.[28]  In that opinion, we observed that "[b]oth healthcare districts and municipalities are empowered to condemn property by eminent domain."[29]  We further recognized that "[b]oth entities could seek to acquire the same property or the property of the other based on an asserted higher public use."[30]  Those factors compelled our conclusion that the potential conflict rendered the offices incompatible.[31]  While our earlier opinion did not discuss further potential conflicts, as mentioned, only one is sufficient for a finding of incompatibility.[32]

Here, the City points to additional potential conflicts for Macedonio.  For instance, the City has submitted evidence that the District has considered property repairs to District-owned property within the City that would require approval from the City's Building and Safety Department.  The City's exercise of its powers and duties over building and safety standards may be at odds with the District's exercise of its powers and duties to approve the repairs and associated costs.[33]

The City also points out that the District approved the distribution of grant money in 2022 to the City's Fire Department and the City's Parks and Recreation Department.  While we do not have a complete picture of the details of these grants, we have previously recognized that an officeholder who sits on both sides of such transactions may face conflicting duties and loyalties.[34]

---

[27] *Ibid*.

[28] 101 Ops.Cal.Atty.Gen., *supra*, at p. 81.

[29] *Id*. at p. 86.

[30] *Ibid*.

[31] *Ibid*.

[32] 85 Ops.Cal.Atty.Gen., *supra*, at p. 200.

[33] See Gov. Code, § 38660 (city powers relating to building repairs and construction).

[34] 104 Ops.Cal.Atty.Gen., *supra* at p. 23 & fn. 42.

Macedonio acknowledges that both of the grants occurred, but defends them on the ground that they were placed on public agendas and that staff properly controlled and disbursed the funds. At the same time, Macedonio generally maintains that there is no overlap in finances or control between the two offices. We are not persuaded. First, the existence of appropriate or proper procedures surrounding a given financial transaction, such as a grant, has no bearing on whether a potential clash of duties or loyalties may exist for purposes of determining incompatibility.[35] Second, the District's provision of grant money to City departments, the City's power to oversee District-managed property repairs, and the eminent domain powers held in common by the City and District all cast doubt on Macedonio's general assertion that the City and District have no overlap in finances or control. An individual serving on the governing bodies of both agencies could encounter any number of situational conflicts. What is best for the City may not always be what is best for the District, and vice-versa. Those conflicts could compromise the dual officeholder's ability to vigorously represent and advocate for both constituencies.[36]

Macedonio urges us to reject the City's incompatibility arguments for further reasons, including that: voters knowingly elected her to City Council while she was serving the District, and did so by an overwhelming majority; social media posts and an online petition support her holding both offices; she has obtained positive outcomes for City residents; the two offices have been simultaneously held in the past; and, attorneys for the District and the City had determined in 2021 that there was no incompatibility.

None of these factors, however, could cure a conflict under the prohibition against holding incompatible offices. No amount of voter support—at the ballot box, by petition, or otherwise—presents a recognized exception to the incompatible-offices prohibition. The prohibition exists despite voter support that places a person in office. Similarly, positive outcomes have no bearing on the legal test for incompatibility, which requires only a mere potential for a significant clash of duties or loyalties.[37] And the past simultaneous holding of the two offices in question, or past opinions by attorneys about the legality of doing so, do not immunize an officer from enforcement of section 1099.

---

[35] See 102 Ops.Cal.Atty.Gen. 39, 54 (2019) ("The incompatible offices doctrine does not turn upon the integrity of the person concerned or his or her individual capacity to achieve impartiality").

[36] 104 Ops.Cal.Atty.Gen. 58, 65 (2021).

[37] *Cf.* 104 Ops.Cal.Atty.Gen., *supra*, at p. 20, fn. 20 (lack of disputes "immaterial").

We conclude that there is a substantial legal issue regarding whether the two offices in question are incompatible, such that Macedonio forfeited her City Council seat when she assumed her second term on the Board.

### 3. The Public Interest Favors Authorizing Suit

Finally, we conclude that it is in the public interest to have this matter conclusively resolved through the prescribed legal process of quo warranto.[38] We generally view the need for judicial resolution of a substantial question of fact or law as a sufficient "public purpose" to warrant granting leave to sue, absent countervailing circumstances such as pending litigation or shortness of time remaining in the term of office.[39] We find no such circumstances here. Indeed, allowing the proposed quo warranto action to proceed would serve the public interest in ensuring that public officials avoid conflicting loyalties in performing their public duties.

Accordingly, the application for leave to sue in quo warranto is GRANTED.

---

[38] See Gov. Code, § 1099, subd. (b).

[39] 98 Ops.Cal.Atty.Gen., *supra*, at p. 101; 95 Ops.Cal.Atty.Gen. 77, 87 (2012).